## LYON *v.* JEROME.

In all cases of delegated authority, where personal trust or confidence is reposed in the agent, and especially where the exercise and application of the power is made subject to his *judgment* or *discretion,* the authority is purely *personal,* and cannot be delegated to another unless there be a special power of substitution. Such is the rule in relation to powers created by deed or will: and *a fortiori* is it so, where the authority is conferred by act of the legislature.

*It was accordingly held* in this case, that the authority conferred upon the *canal commissioners* to enter upon and take possession of the lands &c. of individuals for the construction of a canal, can be executed only by them *in person,* or under their *express direction;* and that an *engineer,* or any other sub-agent of the state, cannot lawfully exercise such power but by the *express direction* of the canal commissioners, or one of them, although to such engineer, or other sub-agent, has been entrusted the superintendence of the construction of the canal in the vicinity of the premises entered upon.

Whether an act of the legislature authorizing the agents of the state to enter upon the lands of individuals, and to take and use property in the construction or repair of canals or other public works, without making provision for an adequate and certain compensation, is valid and constitutional—*quere?*

ERROR from the Supreme Court. Lyon sued Jerome in an action of *trespass* for taking a quantity of stone from his quarry, used in the construction of *locks* on the *Oswego canal.* The defendant justified the taking as chief *engineer* in the construction of the canal, under the statutes relating to the construction of the state canals. The stone was taken by his direction. The *canal commissioner* who had charge of this improvement, saw the work whilst in progress, but gave no directions for taking the stone from the premises of the plaintiff; he testified that the contractors were authorized to take stone from a tract of land belonging to the state, (adjoining the plaintiff's quarry,) or from the bed of the canal, but were not allowed by him to take them from the plaintiff's quarry; he supposed that the stone were taken from the state lands, or from the premises of private persons with their consent,

*1841.*

*Lyon*
*v.*
*Jerome.*

but said had the engineer represented that it was indispensable the stone of the plaintiff should be used, he would have sanctioned the taking of them. He further testified, that the defendant was the chief engineer on the canal, and " had in a measure the supervision of the work and materials." The *plaintiff* produced in evidence a certificate of the defendant as to the quantity of stone taken, in which he stated that the stone had been taken by his directions, under the supposition on his part that the quarry was on lands belonging to the state. The plaintiff offered to prove that the *canal appraisers* had refused to make him any allowance for the stone taken: which evidence was objected to and rejected. A motion was made for a non-suit, on the ground that the stone was *necessary for the construction of the works on the canal,* and that the defendant, as *engineer,* had acted *in good faith,* in directing it to be taken. The judge refused to grant a non-suit, and the jury found a verdict in favor of the plaintiff for $174.52. The defendant moved for a new trial, which was resisted on the grounds that the power to enter upon the lands of individuals and take materials for the construction of the canals, is confided solely to the *canal commissioners,* and being a personal trust cannot be delegated to others; that the *engineers,* without the express direction of the canal commissioners, may enter and take materials for *repairs,* but *not* for the *original construction* of the canals. The supreme court granted a new trial: *See* the opinion delivered by the CHIEF JUSTICE, 15 *Wendell* 570, *et seq.* Under the decision thus made, the circuit judge, when the cause came on to trial a second time, *non-suited* the plaintiff. The plaintiff excepted, and the supreme court refusing to set aside the non-suit, he sued out a writ of error. The cause was argued here by:

*S. Stevens,* for the plaintiff.

*J. A. Spencer,* for the defendant.

*Points presented and argued on the part of the plaintiff:*    1841.

I. The engineer having directed the contractors to take stone for the building of locks from the plaintiff's quarry without the assent of the plaintiff, and without the direction of the canal commissioners, or either of them, is liable to the plaintiff in trespass; more especially is he liable when no necessity existed for the direction. *Statutes of* 1816, *p.* 205, § 2. *Sess. Laws of* 1817, *p.* 302, § 3. *Statutes of* 1824, *p.* 342, § 1.   1 *R. S.*, *1st ed.* 220, §§ 15, 16. *Statutes of* 1820, § 3.   *Rogers and Magee* v. *Bradshaw*, 20 *Johns. R.* 735.   *Jerome* v. *Ross,* 7 *Johns. Ch. R.* 315. *Wheelock* v. *Young and Pratt*, 4 *Wendell* 647.

II. The engineers are not by law invested with a discretionary power of selecting and appropriating to the use of the canal, the lands and materials of an individual.   This important power is given only to the canal commissioners, and they cannot delegate it to another.   See the statutes and authorities above cited, and *Vanderheyden* v. *Young*, 11 *Johns. R.* 150.   *Gilbert* v. *Columbia Turnpike Co.*, 3 *Johns. Ca.* 107.

III. In this case the record shows that no discretion was exercised by any one in selecting the stone in question, as they were taken by mistake, upon the supposition that they belonged to the state.

IV. It appears by the record that the acting canal commissioner, superintending the construction of the Oswego canal, directed the stone for the locks to be taken from the state lands or the bed of the canal; the defendant therefore had not the right, upon any principle, to direct them to be taken from the plaintiff's land.

V. The circuit judge erred in non-suiting the plaintiff; and the supreme court erred in sustaining his decision.

*Points presented and argued on the part of the defendant:*

I. The canal commissioners were, by the Acts of 1817 and of 1824, authorized to take the stone in question for

*Lyon*
*v.*
*Jerome.*

the public work.  *Statutes of* 1817, *p.* 301, *ch.* 262, § 3. *Act for the construction of the Erie and Champlain canals;* and *statutes of* 1824, *ch.* 279, *p.* 342.  *Act for the construction of the Oswego canal.*

II. The canal commissioner proved that the defendant, as chief engineer, had full authority to take such materials as he thought necessary and proper for such work.

III. The defendant acted in good faith, and the evidence shows that he exercised an enlightened judgment in the matter.  Whether he supposed the stone belonged to the state or not, can make no difference.

IV. If he erred in judgment it does not make him a trespasser.  *Jerome* v. *Ross,* 7 *Johns. Ch. R.* 340.  *Rogers* v. *Bradshaw,* 20 *Johns. R.* 739.  *Wheelock* v. *Young,* 4 *Wendell* 647.  See also, *Statutes of* 1820, *ch.* 202, § 1 *and* 21, *p.* 183.  1 *R. S.* 220, § 9 *and* 15.  *Id.* 236, § 100.

After the first verdict, the defendant applied to the circuit judge who presided at the trial, the Hon. HIRAM DENIO, for a new trial, which was denied.—On which occasion the judge delivered an opinion in support of his decision, which being adverted to and approved, both by *Senator* VERPLANCK and the CHANCELLOR, in the opinions delivered by them, is here inserted:

" It was not questioned but that the *commissioners* had a right, if in their judgment it had become necessary, to enter upon the premises of the plaintiff and take these stone.  *Laws of N. Y.,* vol. 4, 301 *b., ch.* 262, § 3.  *Vol.* 6, 342 *b., ch.* 279, § 1.  *Jerome* v. *Ross,* 7 *Johns. Ch. R.* 340.  But I am of opinion that the defendant, as engineer, had not that right.  By the third section of the act of 1817, under which the authority to enter upon lands is given, it is provided that it shall be lawful, &c., for the " canal commissioners, and each of them, by themselves, and by any and every superintendent, agent and engineer employed by them, to enter upon, take possession of, and use, all and singular, any lands, waters and streams necessary for the

prosecution of the improvements intended by this act, and to make all such canals, feeders, dykes, locks, dams, and other works and devices, as they may think proper for making said improvement, doing, nevertheless, no unnecessary damage." By the terms of this section the entry is to be upon such lands &c. as the commissioners or any of them shall think proper; but the entry may be made by themselves, or by any and every superintendent &c. as their instruments. It is the *judgment* of the commissioners, or one of them, which is to determine the propriety of the entry, and not of the agents &c. afterwards named. Such is the obvious construction of the section. The contrary construction would be very unreasonable and extravagant. The power conferred is one of the most important character, nothing less than the taking of the individual property of the citizen without his consent; yet by the construction contended for, this is conferred upon any and every engineer, superintendent and agent, whom the commissioners shall choose to employ. It is not confined to officers of the grade of the defendant in this cause; but if he had the power, it would equally belong to every subordinate agent, down to the chain-bearer in the service of the commissioners. This, certainly, was never intended. There was nothing in the nature of the enterprise undertaken by the state, which could require such extraordinary legislation, nor anything in the exigency of the service which could justify such an indefinite and dangerous grant of power.

The cases which have been cited, give no countenance to the construction insisted on by the defendant. In *Jerome* v. *Ross*, (above cited,) the location of the ledge of rock which was taken, was seen and approved of by Mr. Young, the acting commissioner on that canal; and the late Chancellor Kent, in giving his opinion, 7 *Johns. Ch. R.* 340, declares that "What lands are necessary to be entered upon and used must rest in the *judgment of the commissioners*, and all that can be required is that *they* act

1841.

Lyon
*v.*
Jerome.

1841.

Lyon
v.
Jerome.

with good faith and with sound discretion;" and again, *p.* 342, " I have no doubt, therefore, that under the general authority to enter upon and use any lands necessary for the prosecution of the improvements, doing no unnecessary damage, the commissioners, ' and the *defendant, by their authority,*' might lawfully enter upon and use the ledge," &c.

In *Rogers* v. *Bradshaw,* 20 *Johns. R.* 735, which was an action of trespass against a contractor, for cutting timber in order to open a new road in place of part of a turnpike which had been taken for the canal; the new road had been laid out by the chief engineer. But the act authorizing the laying out new roads where old ones had been encroached upon by the canal, confers the authority not upon the commissioners but upon the *engineers.* *Laws of* 1820, *p.* 190, § 21. The contract for opening the road in this case, however, had been made by Mr. Young, canal commissioner, with the defendants.

There is nothing in the opinion given by the former Chancellor which can be brought in aid of the construction of the act contended for by the defendants, although in this case the powers of the canal officers were admitted to the greatest extent which the safety of the citizen would permit.

The third section of the act last cited, *Laws of* 1820, *p.* 183, § 3, has been referred to as strengthening the view which the defendant's counsel takes of this case. In my judgment, its tendency is very strongly to repudiate their construction of the former statute. It commences with a recital: " And whereas it may happen that the said canals and the works connected therewith may be injured by unforeseen accidents, whereby the navigation may be interrupted, and the lands adjacent thereto may be exposed to damage: therefore, (§ 3,) be it further enacted, *that for the speedy reparation of such injury,* that whenever and as often as such case shall happen, it shall be lawful for the said *commissioners,* or either of them, or of their *engineers,*

or *any other person employed by either of them*, with carts, &c. to enter upon any lands contiguous to such canal"— to get stone, clay, gravel, timbers, and other materials. By this provision, cases of pressing urgency which would permit of no delay, were anticipated; where to await the direction of the superior officers might occasion great public loss, and wide-spread individual damage. Hence the authority required by the exigency of the case, is conferred equally upon the commissioners, engineers and inferior agents; and to shew upon the face of the enactment, that the extraordinary grant of power was intended only to meet an extraordinary case, the preamble is prefixed as a justification for these peculiar provisions. The act being upon the same general subject, the change of phraseology, affords strong evidence that a different construction was intended. In the act under which this defendant justifies, the authority is to the commissioners, *to be exercised by themselves, and the superintendents, engineers, agents,* &c. In the act cited, the power is conferred on the commissioners *and* the engineers, &c.

There is not the least pretence upon this case, that Mr. Seymour (the commissioner,) authorized the taking of these stone. He did, it is true, see the work on the locks in progress, but he says he believed the stone came from the state land, or from private persons, with the consent of the owners. He never knew that the plaintiff's stone were taken, and there is no evidence that he was aware that they were taken from this particular spot. But if the defendant as engineer, in the absence of the commissioner and without any directions upon the subject, would have a right to determine when the lands of individuals might be entered upon, it would not assist him. Mr. Seymour's testimony showed that in this case the stone were directed to be taken from the lands of the state or the bed of the canal, and that, so far from contemplating the necessity of taking the plaintiff's stone, he had determined that the other source would afford a supply. Whatever, then,

might have been the authority of the defendant in the absence of any action by the commissioners, he had none whatever in this case to enter upon the plaintiff's land.

But if the whole authority had been vested in the defendant as engineer, I should greatly doubt whether he could justify the act complained of. He never adjudged that it was necessary or proper to take the plaintiff's stone. He took them by pure mistake. If he had known the true boundary between the land of the plaintiff and the state, it is utterly impossible upon this evidence to say whether he would have taken the stone from the plaintiff's quarry, or from the quarries on the state reservation; and the plaintiff's property was not to be taken without his consent unless by the judgment of the persons upon whom the legislature had conferred the power of judging, it had been determined, that an exigency had arisen in which it had become proper that this transcendent power should be exercised.

I am clearly of opinion, therefore, that no error was committed at the circuit by holding that the action was sustained. This is beyond doubt a case in which the state are bound, upon equitable principles, to indemnify their officer, the defendant, who committed the error which has rendered him responsible for these damages by a very natural mistake, in relying upon an incorrect survey made by a person in the employment of the state. He acted in perfect good faith, and without any unreasonable negligence, and I see not how indemnity can be denied him. The plaintiff, however, cannot be affected by any determination which he made of that question.

The motion for a new trial is therefore denied.


After advisement the following opinions were delivered :


By the CHANCELLOR. In my opinion there should be a reversal of the judgment of the supreme court, for the reasons assigned by the circuit judge, on his refusal to

grant a new trial. If the *commissioners* had the right to enter upon the premises of the plaintiff and take the stone, it does not follow that their *agents* had the same right. Mere executive or ministerial powers may be sub-delegated, but not judicial or discretionary powers. Here the *engineer* acted even without the knowledge of the commissioner, for the reasonable inference from the testimony of the latter is, that he did not know that the plaintiff's property had been taken. On this ground, therefore, I shall vote for a reversal of the judgment of the supreme court.

I have serious doubts also as to the constitutionality of the acts of the legislature under which the property of the plaintiff was taken, no provision having been made whereby the owner of the property might compel the payment of his damages or ensure the compensation to which he was entitled. By the act of 1817, the officers of the state were authorized to enter upon the lands of individuals in the prosecution of their duties for purposes other than that of taking property. By the act of 1820, they may enter upon private property to obtain *materials* for the purposes of repair; but they are not authorized *temporarily* to occupy the lands of individuals, in the *construction* of the public works, and then leave the owners of the property to obtain compensation in the best way they can; and yet such was the law until a subsequent provision was made in the Revised Statutes on the subject. I held in *Bloodgood* v. *The Mohawk and Hudson R. R. Company*, 18 *Wendell* 17, and am still of the same opinion, that before the legislature can authorize the agents of the state, and others, to enter upon and occupy, or destroy, or materially injure the private property of an individual, except in cases of actual necessity, which will not admit of delay, an adequate and certain remedy must be provided, whereby the owner of such property may compel the payment of his damages or compensation. No such provision having been made in the act of 1817, nor in the act for the construction of the Oswego canal, I should be

1841.

Lyon
*v.*
Jerome.

inclined on this ground also to reverse the judgment in this case.

By *Senator* VERPLANCK. This case, as argued before us and in the court below, turns exclusively upon the single and very interesting question of the authority of an inferior officer on our public works, to exercise by virtue of an express or implied delegation a power vested by statute in the canal commissioners.

By the act of 1817, relating to the Erie and Champlain canals, and the subsequent laws, extending its provisions to the construction of the Oswego canal, it was made " lawful for the canal commissioners and each of them, by themselves, and by any agent or engineer employed by them, to enter upon, take possession of and use all and singular any lands, waters and streams necessary for the prosecution of the improvement, and to make all such canals, feeders, locks, &c. as *they may think proper* for making such improvements," &c. Thus a large discretionary power is given to enter upon the lands of any citizen and to take and use such of his property as may be thought proper. The authority is given to the canal commissioners jointly or severally, to be exercised in their discretion, through any proper agent.

In all cases of delegated authority, where the delegation indicates any personal trust or confidence reposed in the agent, and especially where such personal trust is implied by making the exercise and application of the power subject to the *judgment* or *discretion* of the agent or attorney, the general rule is, that these are purely personal authorities, incapable of being again delegated to another, unless a special power of substitution be added. From an early period of our law, this rule has been laid down as to powers given by will or deed to executors, trustees and attorneys, to sell land, make leases, &c.; and modern decisions have extended the principle to the less formal appointments of factors, brokers, and other commercial agents. How much

more strongly then must the reason and policy of the rule apply to the delegation of authority by the state, to its high public officers, made with the solemnity of a legislative act? The language of the statute, as well as the nature of the trust itself, shows that this is an authority confided to the *judgment* and *discretion* of the commissioners themsélves, for the impartial discharge of which they are responsible to the state.

In this instance, as in similar cases of authority to represent private individuals, the person thus intrusted may have occasion to depend upon scientific or professional advice for the guidance of his own judgment. He may even in matters out of the scope of his own information, rely entirely upon the authority of his adviser or assistant. Yet he is still bound to form a judgment for himself, and to assume its responsibility. In this case there was no exercise of any judgment or discretion whatever by the commissioners; there was merely such a general reliance on the supervision and judgment of the engineer, as might amount to an implied delegation of authority, had the commissioner been authorized by law to make such a substitution. But, as the circuit judge before whom the case was tried, well stated it, " it is the judgment of the commissioners, or one of them, which is to determine the propriety of the entry, and not that of the agents," &c. Such is the obvious construction of the statute. A contrary construction would be unreasonable and extravagant. The power conferred is one of the most important character; nothing less then the taking of the property of a citizen without his consent. Yet, by the construction contended for, this is conferred upon *any and every engineer, superintendent and agent,* whom the commissioners may employ, down to the chain-bearers." Judge Denio has, in his opinion on the motion for a new trial, fully examined the statutes bearing on this subject: and to these views, as ·well as to those expressed upon the general merits of the case, I can add nothing. I fully concur with his opinion

1841.

Lyon
*v.*
Jerome.

here, as I have repeatedly done on other occasions when it has been my lot to support the decisions of that able judge at circuit, or as vice-chancellor, against those of higher tribunals.

I have only to add, that it is of the greatest public importance to establish the general rule of agency, that " delegated authority cannot be delegated again, without special power so to do," as governing the official powers, acts and contracts of our state officers. If there be any inconvenience in the strict construction of the statutes as to the canal commissioners, who must so frequently act upon the advice and authority of engineers, that inconvenience can be easily remedied by legislation, (as indeed it appears to have been partially done as to repairs,) which can vest the authority to exercise the power of the state in some designated subordinate officer, or prescribe the mode in which any special power may be delegated. But when we consider what large discretionary powers are frequently vested in our state officers, and especially in the comptroller, in respect to the great pecuniary concerns of the state, its loans, deposits, contracts, &c. we cannot but perceive the immense hazards to which they will be exposed, if these powers can be exercised so as to bind the state by any sub-delegation, express or implied, not authorized by the letter of the statute. If we once depart from the safe and just rule, established by old authorities and frequent decisions in cases of private right, we may hereafter expose great public interests to be sacrificed by the acts of clerks, brokers or agents, exercising the authority of our state officers, under some loose discretionary delegation, perhaps extended by usage and implication. If, unhappily, such a case should hereafter arise, the assertion and application of the old common law principle, either legislatively or judicially, after having once set it aside, might be then hard and inequitable, and would certainly subject the state to censure and odium. For this reason, especially as it is quite evident that this court agrees with this

view of the law of the case, I am anxious that our present decision should stand as a strong and clear precedent upon this ground alone, unconnected with any other question which may hereafter leave a doubt as to the precise principle settled.

The Chancellor, whilst agreeing that the discretionary power is given by statute to the canal commissioners, and cannot be delegated to another, has suggested another ground for reversal. I understand it to be this: that as the acts which regulated the construction of the work, for which the stone was taken and the illegal entry made, do not provide for the compensation of the owner in such cases, the taking will fall within the prohibition of the constitution declaring that " private property shall not be taken for public use without just compensation." This involves not only the right interpretation of a great constitutional provision, but also that of two or more legislative acts. It may perhaps be doubted, whether the constitutional provision intends any thing more than to prescribe to the legislature the duty of providing for such compensation in some way or other: either before granting authority to take private property, or after it is granted. It may, on the other hand, be held to require that the private right should not be divested, until just compensation had been actually made or tendered, so that a mere provision by law for obtaining compensation, would not be sufficient. My own strong conviction of the great republican duty of supporting private rights against public power, would incline me to concur in the opinion expressed by the Chancellor. But we are not now advised, as a court—scarcely any of us as individuals—of the decisions or reasoning of our own state courts, bearing on this point; nor of those of the courts of the United States, if there be any upon the similar provision in the constitution of the United States. Neither is it by any means clear, that some of the acts in force at the period of the construction of the Oswego canal, did not provide sufficient means of compensation in

such cases. The chief justice intimates that a just and reasonable construction of those acts would justify the canal appraisers in allowing a claim for damages. Neither the constitutional point, nor that of the interpretation of these statutes, were raised at the trial, or in the supreme court. They have not been examined in the able and lucid argument of the case before us, by eminent counsel, nor have they been presented to us on their points, nor have we been furnished with such referenees to the authorities as might enlighten our conclusions. I must, therefore, decidedly protest against any judicial expression of opinion, which will place our reversal of the judgment of the supreme court, upon reasons which have not been examined nor discussed in the argument before us.

The most learned and venerable of all judicial authorities, has given an impressive testimony to the necessity of legal argument in cases of doubt and difference, for the guidance of the most experienced judges, and has ascribed to it a weight and efficacy beyond the reach of unassisted human reason.\* That aid is peculiarly required in our court. When a question has been "eviscerated," (to use the strong expression of a lay member of the appellate court of Great Britain,) by the previous examination of the courts below; by the selection of the special points of appeal; by the collection of authorities, and by the arguments of counsel, this court may arrive at the soundest conclusions more slowly indeed, but more surely than the learned tribunals whose decisions, made under the overwhelming press of business, we are called upon deliberately to review. Without that aid, in some form or degree, we are probably more liable to err than other courts. Un-

---

\* The authority alluded to, is that of Lord Coke, 9 *Rep.Pref.* where, in respect to the decision of "those cases that be *tortuosi*,and of difficulty," he says, "no one man alone,with all his true and uttermost labors,nor all the actors in them, themselves by themselves, *out* of a court of justice nor *in* court, without solemn argument, where, (I am persuaded,) Almighty God openeth and enlargeth the understanding of those desirous of just and right, could have ever attained unto."

der this conviction, many of us concur in placing our decision of reversal exclusively upon the reasons and grounds so fully and ably argued before us.

By the PRESIDENT of the Senate. This was an action of trespass for breaking the plaintiff's close, and taking and carrying away stone from his quarry for the construction of three locks on the Oswego canal. The defence was, that Jerome was the principal engineer on that work, and *as such*, was authorized to perform the acts complained of as a trespass. This case, therefore, involves the important subject of the powers and liabilities of public officers, in the discharge of their official duties. These, in the present instance are: 1st. Either derived from the general or special law, applicable to the case; 2d. Or result from the nature of the office itself.

The statute of 1834, *ch.* 279, § 1, directing the construction of the Oswego canal, refers to the third section of that of 1817, in relation to the Erie and Champlain canals, for the powers and duties of the canal commissioner, and all subordinate officers and agents to be employed on the work in question. That section gives to the canal commissioner, and, I think, to him *exclusively*, the important judicial power of determining, in all cases, the necessity and expediency of appropriating the lands or property of individual citizens to the public use, in the construction of the work in question. This is an exceedingly delicate and important power, and only exists in the state by virtue of her right of eminent domain as sovereign. In expressly granting this power, a confidence in the grantee of the power as to its exercise is implied. It cannot, therefore, be delegated. It must be exercised by the grantee in person, and not by proxy or substitute. The commissioner can *act* by others. He must *judge* himself. He only can decide upon the necessity or expediency in any case of appropriating private property to public use; but he may employ his subordinate officers or agents to carry such de-

1841.

Lyon
v.
Jerome.

cision into effect. Such, I think, is the fair interpretation as well of the special as of the general law applicable to this case; so also are the authorities. See *Statutes of* 1817, ch. 262, § 3. *Statutes of* 1820, ch. 202, § 3. 1 *R. S.* 220, § 15, 16. *Vanderheyden* v. *Young*, 11 *Johns. R.* 150. *Rogers & Magee* v. *Bradshaw*, 20 *Id.* 735. *Gilbert* v. *Columbia Turnpike Co.* 3 *Johns. Cas.* 107. *Jerome* v. *Ross*, 7 *Johns. Ch. R.* 315. *Wheelock* v. *Young & Pratt*, 4 *Wendell*, 647.

From the record it does not appear that Mr. Seymour, the canal commissioner having charge of this public work, had directed the appropriation of the materials in question to the public use; or determined the necessity or propriety of such appropriation. Nor does it appear that the defendant had any authority to make the appropriation in question, derived either from any general or special directions of the canal commissioner to that effect; on the contrary, it does appear that the commissioner expressly directed the stone for the work in question to be taken from the quarry belonging to the state. It is undoubtedly true, that the engineer supposed that he was complying with such directions, and that the quarry from which the stone in question was taken, did belong to the state. It was doubtless a mistake; and, therefore, not a wilful trespass. But it was still a trespass, for which, when discovered, due amends should have been immediately made.

It only remains to inquire whether any authority to make the appropriation of the materials in question, resulted from the nature of the office of principal engineer exercised by the defendant? This inquiry has been virtually answered already in what has been said upon the first point. If that be correct, it is conclusive of this point also. The power in question, as well as every other to be exercised by the public officers and agents, in the construction of the Oswego canal, is derived either from the general law, or the special statute authorizing that work, or from that to which the special statute expressly refers. We

have already seen that this power, thus derived, is given exclusively to the canal commissioner, and could only be exercised by that officer himself in person. This, if correct, is conclusive of the whole case. The engineer possessed no power not derived either from the general law or special statute. · Neither the one nor the other gave him the power in question. Nor is that power independent of the general law and the statute either an incident of the office of principal engineer, or necessary to the exercise of the other unquestionable powers, or the due discharge of the acknowledged duties of that office. It follows, then, that the defendant did not possess the power in question, neither: 1. By the general or special law; or by any directions general or special given him by the canal commissioner having charge of the work; nor, 2. As an incident of the office of principal engineer. It thence follows that the defendant was, in this case, a trespasser; and, as such, is liable in damages to the plaintiff in this action.

Upon these grounds, I am of opinion, that the judgment of the supreme court is erroneous, and should be reversed with costs.

On the question being put, *Shall this judgment be reversed?* all the members of the court present, who had heard the argument of the cause, answered in the *affirmative.* Whereupon the judgment of the supreme court was REVERSED.