FARMERS' MUTUAL FIRE INS. CO. *v.* CHASE. { Mar. 20, 1876.

The act of incorporation of the plaintiff company provided, "That the directors shall, after receiving notice of any loss or damage by fire sustained by any member, and ascertaining the same, or after the rendition of any judgment against said company for such loss or damage, settle and determine the sum to be paid by the several members thereof, as their respective proportions of such loss * * ; and the sum to be paid by each member shall always be in proportion to the original amount of his deposit note or notes," &c. *Held*, that an assessment calling for the exercise of discretion on the part of the directors could only be made by them.

Where a power to be executed necessarily involves the exercise of judgment and discretion, it cannot be delegated.

At a meeting of the board of directors of the plaintiff company, the following vote was passed : " Whereas, the directors of the F. M. F. I. Co. have made an assessment to cover all debts, losses, and expenses of said company, and added the amount authorized by law thereto, and thereby made all the assessments that they are authorized to make, and considering it for the best interests of the company and expedition in making collections,—therefore, *Resolved*, that the treasurer be authorized to give up the premium notes of any person, on demand, when said person has paid all assessments and dues to the company." *Held*, that the vote was not a ratification of an assessment made by persons other than the directors.

An assessment, made to supply a deficiency arising from uncollected assessments not made during the existence of the defendant's policy, is invalid as to him.

FROM BELKNAP CIRCUIT COURT.

This case was transferred on the special report of a referee.

SPECIAL REPORT.

Action in assumpsit on the defendant's premium note for $15.75, dated December 24, 1859, policy No. 57,326, to recover an assessment of .08; also, on note of $30, dated December 22, 1860, policy No. 59,850, to recover an assessment of .89; also, on note of $9.50, dated January 23, 1866, policy No. 70,092, to recover an assessment of $4.17. All of said assessments were made under a vote of the directors of the Farmers' Mutual Fire Insurance Company, passed May 2, 1871, as follows: "*Resolved*, That the treasurer assess upon the premium notes held by this company a sufficient sum of money to pay all outstanding losses and damages by fire or lightning which

have happened to members of this company, agreeable to the charter and by-laws of the same, and all money hired for the use of the company with interest upon it, and interest on losses still unpaid, together with such sums as may be necessary for the incidental charges in making and collecting this assessment; also, to equalize and reimburse the sums paid by members on unexpired policies, and for ascertaining the amount of the several losses by fire or lightning prior to December 2, 1870."

I find that the treasurer, with the assistance of Isaac S. French, made the assessment, fixed the rates, made all of the calculations, and determined the amount to be paid by each person assessed; that no report of the same was submitted to the directors, and no ratification by them made of the assessment, unless the vote of July 2, 1872—copy annexed—constitutes a ratification. Said assessment was made under that part of section 8 of the act of incorporation, of which a copy is annexed hereunto.

I find that the assessment was made to cover the entire indebtedness of the company,—losses, hired money, interest on same and unpaid expenses, and a large amount of old uncollected assessments made in years past—part of them during the existence of the defendant's policy, —to cover losses, and an indebtedness commencing in 1859; which assessments had been remitted and charged off by the directors at different times,—at one time to the amount of over $5,000, and at another of nearly $9,000; and, if said assessments had been collected, I find that the assessment of May 2, 1871, would have been very much less. This was made for the purpose of closing the affairs of the company. I find that, in addition to the indebtedness of the company as it was then supposed to be, there was included in its assessment about $1,600 for making the same, and for estimated future expenses up to July, 1872, for salaries of officers, for attending courts, and for printing and advertising; and also 30 per cent. of the full amount, I find that, including said overlay of $1,600, was in violation of the statutes.

In this case (not in *cases* v. *Goodell* or *Hildreth* or *Brown*), it appeared that, at the time of the assessment, there were losses which the directors refused to pay, and which were not included. Judgments on the same to the amount of $2,400 have since been obtained against the company, and are now in full force.

It appeared that, before the assessment was made, a large amount of premium notes had been given up by the treasurer upon payment of a certain sum by him fixed. I find that, in fixing the rates, those notes were included in the total amount of notes, and the rates of assessment are no higher by reason of the same being given up.

The following notice was published by the treasurer of the company three weeks successively in the *Laconia Democrat*, a newspaper published in this state; but it does not appear that the directors designated in what newspaper it should be published, as required by article 5 of the by-laws. It appears, by the testimony of Dr. French, that the treasurer proposed to publish it in said paper, to which some of the

directors assented without any formal vote; to which evidence the defendant excepted :

"NOTICE.

" The directors of the Farmers' Mutual Fire Insurance Company, of Gilmanton, N. H., have ordered the following assessment on the premium notes of said company for the payment of losses sustained by the members of said company, and return premiums on policies cancelled by said company, and incidental expenses, from Sept. 1, 1869, to Dec. 2, 1870.

"On all notes running six years on the old low cash premium plan, dated from Oct. 1, 1859, to Dec. 31, 1859, 5 mills (so for each quarter) ; July 1, 1864, to Sept. 30, 1864, 233 mills. New plan,—Oct. 1, 1864, to Dec. 31, 1864, 337 mills; (and for each quarter to) Oct. 1, 1870, to Dec. 2, 1870, 53 mills. Dated Dec. 25, 1871."

The rates of assessment were made for each quarter of the year. Assessments were not made annually by the company, but were made once in two years,—not, in my opinion, in accordance with the requirements of the by-laws.

On the first day of October, 1864, the directors abandoned their low cash premium plan of insurance, and required an advance payment of premium on each policy, sufficient, as was supposed, to pay its share of all losses and expenses that might occur ; and also required a premium note of the same amount as the cash premium paid in. The company continued business under that system until December 2, 1870, when they ceased to issue policies. I find that the treasurer applied a large amount of money, received under this plan, in payment of losses under the old or low cash plan, and that $5,000 of the money applied was included in the assessment. The total amount of cash premiums received under the new plan, after deducting all the running expenses of the company from October 1, 1864, to December 2, 1870, and paid to the treasurer, was $58,204.55. The total amount of losses under the new plan, during said time, was $41,851.19.

The plaintiff took the position that, if the assessment was too large, the referee had authority to reduce it in amount, and find in favor of the plaintiff for the balance ; but the referee ruled otherwise, and the plaintiff excepted.

If the court shall be of the opinion that the foregoing facts do not in law constitute a defence to this action, then I find that the defendant did promise in manner and form as the plaintiffs have declared, and assess damages in the sum of five dollars and forty-five cents.

COPY OF SEC. 8 OF ACT OF INCORPORATION, IN PART.

SEC. 8. *And be it, &c.*, " That the directors shall, after receiving notice of any loss or damage by fire, sustained by any member, and ascertaining the same, or after the rendition of any judgment as aforesaid against said company, for such loss or damage, settle and determine the sum to be paid by the several members thereof, as their respective proportions of such loss, and publish the same in such

manner as they shall see fit, or as the by-laws shall have prescribed; and the sum to be paid by each member shall always be in proportion to the original amount of his deposit note or notes, and shall be paid to the treasurer within thirty days next after the publication of said notice; and if any member," &c.          *          *          *          *

COPY OF ART. 5 OF BY-LAWS.

"ART. 5. Notice of assessments shall be given by the treasurer, and published in one or more newspapers printed in this state, as the directors may designate, at least three weeks successively, the last publication whereof to be at least fifteen days prior to the time of payment. He shall give such other notice as the directors may order, and may appoint suitable persons to receive assessments in central places."

At the meeting of the board of directors of the Farmers' Mutual Fire Insurance Company, held July 2, 1872, the following vote was passed:

WHEREAS, The directors of the Farmers' Mutual Fire Insurance Company have made an assessment to cover all debts, losses, and expenses of said company, and added the amount authorized by law thereto, and thereby made all the assessments that they are authorized to make, and considering it for the best interests of the company, and expedition in making collections; therefore,

*Resolved,* That the treasurer be authorized to give up the premium notes of any person on demand, when said person has paid all assessments and dues to the company.

*Rogers* and *Hibbard*, for the plaintiffs.

*Stone*, for the defendant.

* RAND, J., C. C. This action is assumpsit to recover assessments on premium notes, signed by the defendant. The assessments were all made under a vote of the directors of the company, passed May 2, 1871, as follows:

"*Resolved,* That the treasurer assess upon the premium notes held by this company a sufficient sum of money to pay all outstanding losses and damages by fire or lightning which have happened to members of this company, agreeable to the charter and by-laws of the same, and all money hired for the use of the company, with interest upon it, and interest on losses still unpaid, together with such sums as may be necessary for the incidental charges in making and collecting this assessment. Also, to equalize and reimburse the sums paid by members on unexpired policies, and for ascertaining the amount of the several losses by fire or lightning prior to December 2, 1870."

The case was sent to a referee, who found for the defendant, and made a special report, a part of which is as follows:

---

* SMITH, J., did not sit.

"I find that the treasurer, with the assistance of Isaac S. French, made the assessment, fixed the rates, made all of the calculations, and determined the amount to be paid by each person assessed; that no report of the same was submitted to the directors, and no ratification by them made of the assessment, unless the vote of July 2, 1872 —copy annexed—constitutes a ratification. Said assessment was made under that part of section eight of the act of incorporation, of which a copy is annexed hereunto.

"I find that the assessment was made to cover the entire indebtedness of the company,—losses, hired money, interest on the same, and unpaid expenses, and a large amount of old, uncollected assessments, made in years past—part of them during the existence of the defendant's policy—to cover losses, and an indebtedness commencing in 1859, which assessments had been remitted and charged off by the directors at different times—at one time to the amount of over $5,000, and at another of nearly $9,000; and if said assessments had been collected, I find that the assessment of May 2, 1871, would have been very much less. This was made for the purpose of closing the affairs of the company. I find that, in addition to the indebtedness of the company as it was then supposed to be, there was included in its assessment about $1,600 for making the same, and for estimated future expenses up to July, 1872, for salaries of officers, for attending courts, and for printing and advertising; and also thirty per cent. of the full amount, I find that, including said overlay of $1,600, was in violation of the statutes."

Assuming that this assessment might have been made under the charter of the company, and was such as the vote of May 2, 1871, authorized the treasurer to make, if the directors could confer such authority, the question arises whether it was not such an assessment as only the directors could make. Under their charter, could they delegate to others the power to make such an assessment? Section 8 of the charter provides, "That the directors shall, after receiving notice of any loss or damage by fire sustained by any member, and ascertaining the same, or after the rendition of any judgment as aforesaid against said company for such loss or damage, settle and determine the sum to be paid by the several members thereof, as their respective proportions of such loss," &c. The plaintiffs refer in their brief to the *Atlantic M. F. I. Co.* v. *Sanders*, 36 N. H. 252. That case differs very materially from this. The ninth article of the charter of the Atlantic company provided "that all assessments should be determined by the directors;" and the court say,—"The directors must determine the assessment. Nothing more is to be done by them. The rule by which the assessment is to be made is fixed by the charter itself, leaving no discretion to be exercised by the directors, or by anybody else."

The opinion in that case was based on the assumption that there was no discretion to be exercised by the directors; that the assessment was a "matter of mere arithmetical computation," "analogous to the vote of a town for raising a tax." It can hardly be said, that to make such an assessment as the referee in this case has described in his

report was a matter of mere arithmetical computation, which called for the exercise of no discretion on the part of the directors. The general rule is, that, when the power to be executed involves, necessarily, the exercise of judgment and discretion, it cannot be delegated. *Delegatus, non potest delegare. Gillis* v. *Bailey*, 21 N. H. 162; 2 Kent's Com. 633; Angell & Ames on Corp., sec. 277; *Rex* v. *Gravesend*, 2 B. & C. 602; *Stoughton* v. *Baker*, 4 Mass. 522; *Emerson* v. *Company*, 12 Mass. 237; *Brewster* v. *Hobart*, 15 Pick. 307; *Coles* v. *Trecothick*, 9 Ves. 236; Paley on Agency 128; *Commercial Bank of Lake Erie* v. *Norton*, 1 Hill 501; *Tibbetts* v. *Walker*, 4 Mass. 595; *Lyon* v. *Jerome*, 26 Wend. 485; *Percy* v. *Millondon*, 3 La. 568; *Commissioners* v. *Bank of Buffalo*, 6 Paige 497; *Haven* v. *N. H. Asylum*, 13 N. H. 535; *Blore* v. *Sutton*, 3 Meriv. 237; Story on Agency, sec. 13.

The objection that the assessment was not made by the directors cannot be removed by the vote of July 2, 1872. The vote is a resolution that the treasurer be authorized to give up premium notes to those who have paid assessments and dues, and contains a declaration that the directors made an assessment, which they certainly did not make. It does not show that the directors exercised any discretion in regard to the assessment, either before or after it was made. It is claimed that this vote is a ratification of the act of the treasurer and Mr. French. To say the least, it is not at all clear that the directors could ratify what they could not authorize under their charter.

It will be noticed that the referee finds that the assessment was made to cover, among other things, a large amount of old uncollected assessments made in years past, part of them during the existence of the defendant's policy. The defendant was assessed to supply a deficiency arising from uncollected assessments not made during the existence of his policy,—to what extent does not appear. In *Company* v. *Harvey*, 45 N. H. 298, the court say,—"The evidence as to what was included in the assessment is by no means distinct; but we understand it as showing that expenses and liabilities, incurred long before the defendant became a member of the company, were included in the assessment; and this seems admitted in the argument of the plaintiffs' counsel. An assessment, including such expenses, would be invalid as against the defendant. *Long Pond Co.* v. *Houghton*, 6 Gray 77."

CUSHING, C. J., and LADD, J., concurred.

*Judgment on the report for the defendant.*