HERBERT F. HALL ET AL. V. BYRON B. HOPPER.

FILED MAY 8, 1902. No. 11,320.

Commissioner's opinion, Department No. 2.

1. **Principal and Agent:** REPUDIATION OF PART OF UNAUTHORIZED CONTRACT. A principal can not accept the part of an unauthorized contract entered into by his agent which is beneficial to him, and repudiate the part which is to his detriment. He must either ratify the whole contract or repudiate it entirely.

2. **Suit on Contract of Agent:** LIMITATION OF AUTHORITY: KNOWLEDGE OF DEFENDANT. Where a plaintiff sues on a contract entered into through an agent who apparently acted with general authority, he will not be permitted to show a limitation of the authority of his agent in making such a contract, unless he proves that such limitation was known to exist by the defendant at the time he contract was entered into.

ERROR from the district court for Douglas county. Tried below before POWELL, J. *Affirmed.*

*Richard S. Horton,* for plaintiffs in error.

*Baldrige & De Bord, contra.*

OLDHAM, C.

This was an action for damages for a breach of a contract for the sale of 25,000 bushels of corn. The petition alleges, in substance, that the plaintiffs purchased 25,000 bushels of corn from the defendant on what is known among dealers as "Baltimore terms," for which they agreed to pay twenty cents per bushel if the corn "graded mixed." The petition alleges that under this contract the defendant delivered to them 21,500 bushels of corn and that they had advanced to him the sum of $2,151.25 on said contract of purchase before the corn was received. The petition then sets out at length what is meant by "Baltimore terms," and alleges that under these terms they have overpaid the defendant the sum of $1,132.93 for the corn received. There was a second count in the petition, asking for damages for defendant's refusal to deliver the remaining 3,500 bushels of corn contracted for. Defendant answered this petition, admitting that he had contracted to sell to plaintiffs 25,000 bushels of corn, but denied that said contract provided that the corn was to be sold on "Baltimore terms"; but alleged, on the contrary, that he was to receive twenty cents per bushel for all the corn sold plaintiffs which "graded mixed," and nineteen cents per bushel for all the remainder of the corn which he sold plaintiffs. He admitted that plaintiffs had advanced him the sum of money stated in their petition, and he alleged that he had delivered 21,721 bushels of corn to plaintiffs on this contract. He further alleged that under the contract entered into there was still due him the sum of $257.53. He further alleged that he refused to deliver the remainder of the corn contracted for because of plaintiffs' refusal to pay the price agreed upon for the corn delivered. To this answer plaintiffs filed a general denial. On issues thus

joined there was a trial to a jury, verdict for defendant, and judgment was entered on the verdict, and plaintiffs' bring error to this court.

It developed in the trial of this cause that the contract for the purchase of this grain was entered into by the plaintiffs through the agency of Harry C. Miller, a grain broker doing business in the city of Omaha, Nebraska. No reference, however is made to the agency of Miller, either in the petition, answer or reply. The contract was a verbal one, entered into and discussed mainly over the long-distance telephone between Waterloo, Nebraska, and Omaha, and the testimony is sharply conflicting as to what the terms of the contract were; Miller claiming the contract to be as set forth in plaintiffs' petition and the defendant claiming it to be as alleged in his answer. In the trial of the case plaintiffs sought to show that Miller's agency was a limited one, and that he had no authority to contract for the purchase of grain for the plaintiffs on other than "Baltimore terms." The entire controversy depended on the terms of the contract, and on nothing else. Plaintiffs requested three instructions submitting to the jury the question of Miller's limited agency to contract for plaintiffs. These instructions were all refused. The jury was instructed only on the issues as set forth in the pleadings. The only action of the trial court for which we are asked to reverse this judgment is its refusal to submit to the jury the question of Miller's limited agency in making this contract. Plaintiffs admit that, if Miller had the authority to make such a contract as defendant alleges, then, under the conflict of testimony as to what the contract was, we would not be justified in disturbing the verdict of the jury; but he contends that it was reversible error for the court to refuse to submit this issue to the jury.

With this contention we can not agree. Plaintiffs seek to avail themselves of the beneficial part of the contract entered into by their agent, and if they desire to accept any part of this contract they must accept it as a whole. It is elemental that a principal can not ratify the part of an

unauthorized contract made by his agent which is advantageous to him and repudiate the part which is to his detriment. Miller was apparently acting with general authority to purchase grain for plaintiffs, and no limitation of this authority would bind the defendant unless the evidence clearly showed that this alleged limitation of authority was known to the defendant at the time he contracted with Miller. This the evidence fails to show.

It is therefore recommended that the judgment of the district court be affirmed.

BARNES and POUND, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

'AFFIRMED.