Peace River Phosphate Mining Company, a Corporation, *Appellant*, vs. Thomas A. Green, Incorporated, a Corporation, *Appellee.*

135 So. 828.

Division A.

Opinion filed July 7, 1931.

*Treadwell & Treadwell,* for Appellants;
*Sparkman & Knight,* for Appellee.

BUFORD, C.J.—Appellant filed suit to foreclose a mortgage against the appellee. The appellee filed answer and cross bill praying affirmative relief by way of rescission and cancellation.

Complainant in the court below interposed motion to strike the allegations of the answer and cross bill upon which claim for affirmative relief was based. After amendment to the answer and cross bill replication was filed. Testimony was taken before a Master; report was made, final decree was entered in favor of the defendant, granting cancellation and rescission of the contract and requiring the complainant to repay the amount paid to the complainant by the defendant. From the final decree appeal was taken.

The allegations of the answer and cross bill are sufficient when measured by the rule as stated in the case of Duval Investment Co. vs. Stockton, 54 Fla. 296, 45 Sou. 497, in which it was said:

"The defendant being a corporation acts only by agents and the allegation of the name and particular authority of the agent is not in general essential. In this

case the allegation is that the defendant entered into the agreement. It was not necessary to name the agent, but having been named it is sufficient to allege that such agent 'was thereto duly authorized'. Childress v. Emory, 8 Wheat. (U. S.) 642; Nicholson v. Croft, 2 Burrow's Rep. 1188; 16 Ency. Pl. & Pr. 900. See also Bowen, Admr. v. Jacksonville Elec. Co., 51 Fla. 152, 41 South. Rep. 400.''

The record shows that the appellant was so connected with the American Agricultural Chemical Company that the sale of the land involved in this suit was handled first through that company. It is apparent that Peace River Phosphate Mining Company was controlled by the American Agricultural Chemical Company, however, that is immaterial here. The lands were listed by the owner through its agent, Wayne Thomas, with Joseph P. Whyte, a realtor in Tampa, Florida. Thomas, acting for the owner, delivered to Whyte a listing of a large acreage of Florida land specifying prices and terms upon which Whyte was authorized to sell the same. The lands here involved were among the lands so listed. Thomas delivered to Whyte certain maps or plats embracing the lands. Associated with Whyte was one Oakman who was authorized by Whyte to show the defendant lands of the complainant and Oakman took Green, the agent of complainant, and showed Green certain lands that he believed were the lands embraced in the purchase. He showed Green sections 21, 22, and 23 in Twp. 33 S., R. 24 E., verily believing at the time that he was showing Green sections 14, 15 and 16 in the same township and range, which mistake was occasioned by the fact that the plat showed the town of Nocatee to be located in sections 12 and 13, when, as a matter of fact, it was located in section 23 and the town of Nocatee was used as a basic point from which Oakman traveled to locate the lands which he intended to show to Green and which Green intended to see in sections 14, 15 and 16. Green was not familiar with the lands nor with the location of the town of Nocatee. He

accepted the map or plat furnished by the owner as correct and was willing to buy the lands lying immediately west of the town of Nocatee and did not see or intend to buy lands lying North or Northwest of Nocatee and at a greater distance from said town. The evidence was clear that there was an honest but very material mistake in the location of the lands both by Green, the agent of the purchaser, and Oakman, the agent of the owner. Check for binder payment was delivered by Green to Oakman and by Oakman to Thomas, binding the trade and afterwards the deal was closed. A deed was made conveying to Green lands which he had not seen, nor intended to buy, and the first payment and mortgage for balance was made to the owner.

A great deal has been said in the briefs, pro and con, as to whether or not Oakman was the agent of the owner. It is immaterial whether he was agent for the owner or not. He acted for the owner apparently within the scope of his authority as agent and the owner accepted the fruits of his activity in that regard and closed the deal entirely upon the showing and representations made by Oakman.

It is too well settled to be now questioned that one who accepts the fruits of a transaction consummated by one who acts within the apparent scope of the owner's authority as agent and who has ratified the acts of the apparent agent by consummating a contract can not be heard to deny the authority of the apparent agent in acting for the owner in that transaction. The owner can not ratify the act of the agent in part and reject it in part. DeBartlett vs. DeWilson, et al., 52 Fla. 497, 42 Sou. 189, 11 Am. Eng. Ann. Cas. 311; Hall vs. Hopper, 64 Neb. 633, 90 N. W. 549.

It is contended here that Oakman was a sub-agent and not the agent of the appellant. So far as the record shows, Oakman did nothing that could not have been done by a sub-agent in such manner as to bind the principal of the agent. Oakman did nothing that required the exercise of judgment, choice or discretion. He simply performed the

ministerial act of attempting to show the land of the owner to a proposed purchaser. By mistake he showed the wrong land and, therefore, there was never any meeting of the minds as to the purchase and sale of the lands described in the deed and in the mortgage. The case of McKinnon v. Vollmar, et al., 75 Wisc. 82, 43 N. W. 800, is in point and therein it is said:

"We understand the law of this case to be that if the wrong land was pointed out to Derfus, whether intentionally or not, by an agent of the defendants, and the plaintiffs purchased, believing that the right land had been shown Derfus, they may recover back the consideration paid therefor, although the defendants did not know, when the consideration was paid, that Derfus had been shown the wrong land, and although they made no representation to the purchasers of the amount of pine on the land; but if the person so showing the land was not the agent of the defendants, all other circumstances being as above supposed, the defendants are not liable in this action. This is the doctrine of Law vs. Grant, 37 Wis. 548. Hence, it becomes important to ascertain whether the person who showed Derfus the wrong land was or was not the agent of the defendant in that behalf. The jury did not find that Seibert was the agent of defendants to sell their land, but the undisputed evidence establishes the fact that he was. The jury found that Seibert employed Greeves to show Derfus the land. Was Greeves the agent of the defendants? The answer depends upon the question of Seibert's authority to employ a sub-agent for that purpose. The rule is that an agent in whom is reposed some trust or confidence in the performance of his agency, or who is required to exercise therein discretion or judgment, has no authority to entrust the performance of those duties to another, and thus bind the principal for the acts of the latter without the consent of his principal. Numerous cases illustrating this rule will be found cited in 1 Amer. & Eng. Cyclop. Law, 368, note 4. On the other hand, an agent may appoint a subagent to do acts in the course of the agency which do not call for the exercise of judgment or discretion, but which are purely executive or ministerial, and the principal is bound by the acts of such subagent.

Renwick vs. Bancroft, 56 Iowa 527, 9 N. W. Rep. 367; Lyon v. Jerome, 26 Wend. 485; Ewell's Evans, Ag. *43, and cases there cited. In this case the showing of the land to Derfus was a mere executive or ministerial act, requiring no exercise of júdgment or discretion, and it was therefore entirely competent for Seibert to employ Greeves to perform it. It may be observed here that the defendants knew that Greeves had been selected by Seibert to show Derfus the land, and made no objection thereto.''

So, in this case it appears that Thomas, acting for the owner listed the land with Whyte and authorized him to sell the same, and that Thomas knew that Oakman was to show the lands, in fact he dealt directly with Oakman in regard to the time within which the lands were to be shown. Aside from this, the undisputed fact is that the mistake in the location of the lands was due entirely to the error in the map or plat furnished by the owner. The owner certainly cannot evade the result of a mistake which is occasioned by an error in the document which the owner has furnished for the guidance of the buyer. If the plat had correctly shown the location of Nocatee there would have been no mistake as to the location of the land. So, after all, the real error was that of the owner.

It, therefore, appears that the Chancellor was correct in his holding that the owner was responsible for the error occurring by reason of Green being shown the wrong land.

The only further question which we need to consider here is whether or not the proof is sufficient to warrant the decree of rescission, cancellation and the placing of the parties in status quo. In Langley vs. Irons Land & Development Co., 94 Fla. 1010, 114 Sou. 769, this Court held:

''Innocent Misrepresentation of Fact.—According to the weight of authority, misrepresentation of material facts, although innocently made, if acted on by the other party to his detriment will constitute a sufficient ground for rescission and cancellation in equity. The real inquiry is not whether the party making the representation

knew it to be false, but whether the other party believed it to be true and was misled by it in making the contract; and, whether the misrepresentation is made innocently or knowingly, the effect is the same. It is as conclusive a ground of relief in equity as a wilful and false assertion, for it operates as a surprise and imposition on the other party; and in such case the party must be held to his misrepresentations.

In a sale of real estate, if one party believes he is buying a particular piece of property while the other thinks he is selling another piece, there is no meeting of minds so as to constitute a valid contract. Thus, for instance if the purchaser, desiring to inspect the property before completing the bargain, has a particular lot pointed out to him, which is satisfactory and which he supposes he is to acquire; but by accident or mistake he is shown the wrong lot, that is, a lot different from that which the vendor understands he is selling and which is described in the deed, it is a case in which equity may give relief on the ground of mutual mistake.

The jurisdiction of equity to decree the cancellation of an instrument because at the time of its execution the parties, or even one of them, labored under a mistake of fact, is well recognized; and the rule is the same whether the instrument relates to an executory agreement, or one that has been executed. Thus in case of material mistake by one or both of the parties to a deed as to identity, situation, boundaries, title, amount or value of land conveyed, equity will cancel the deed, whether or not there is actual fraud.

When a deed is made in pursuance of a contract of sale of real estate, entered into under a misapprehension or in ignorance of the location of the vendor's land, and conveys to the purchaser a tract of land wholly different in location and character from the land contracted for, a court of equity will, at the suit of the vendee, rescind the contract of sale and put the parties in *status quo,* although there was no fraudulent intent on the part of the grantor. In such case rescission results from the mutual mistake under which the parties entered into the contract.''

For the reasons stated, the decree should be affirmed and it is so ordered.

Affirmed.

ELLIS AND BROWN, J.J., concur.

WHITFIELD, P.J., AND TERRELL AND DAVIS, J.J., concur in the opinion and judgment.