PER CURIAM.
Appellant, a land developer, and appellees entered into an agreement whereby appel-lees contracted to purchase Lot 461 of the unrecorded plat of the Sixth Addition to Island Harbors, appellant’s development. The agreement was signed in early 1959, at which time the development of the Sixth Addition was incomplete and Lot 461 was partially submerged land to be filled by appellant. The “unrecorded plat” to which the contract referred was a “sales plat,” subsequently revealed to have been prepared from aerial photographs and not from a detailed survey.
Thereafter, the development was completed and appellant caused to be recorded a plat of the development and a deed to ap-pellees, conveying Lot 461, Sixth Addition to Island Harbors according to the record plat. Both the “sales plat” and the recorded plat indicated that Lot 461 was an irregular tract located at the tip of a finger *100 of land extending into Matlacha Pass. However, a comparison of the plats reveals that in completing dredging and filling the appellant had extended the finger of land some 50 feet beyond the boundary established by the sales plat and somewhat altered the shape of the land area. Rather than platting this excessive fill as an increment to appellees’ lot, appellant platted Lot 461 so that the line running from the tip of the finger toward the base remained 150 feet on each plat. . As a result, the southwest boundary (nearest the base of the finger of land) was moved 50 feet in a northeasterly direction on the recorded plat. In short, the boundaries of Lot 461 were shifted 50 feet in a northeasterly - direction with consequent changes in the size and shape of the lot and a change in its geographic location.
Upon discovering the alteration effected in the recorded plat, appellees moved to rescind the entire transaction. After hearing testimony and proofs, the lower court granted rescission, cancellation and, in effect, directed appellant to return the purchase price to appellees.
The question presented below and in this court is whether cancellation and rescission are available to the purchasers when a vendor agrees to convey a tract of certain dimensions, configuration and location but in fact conveys a tract of different dimensions, configuration and location. • The lower court answered this question affirmatively. Reasoning that appellees became vested with beneficial ownership of Lot 461 upon execution of the sales contract, the Chancellor concluded that appellant had no right to realign the boundaries of Lot 461, to alter configuration of the lot or to deprive appellees of any excess land inadvertently created in completing the development. The chancellor’s memorandum opinion recited, inter alia:
“It is undisputed that the boundary between Lot 460 and Lot 461 was moved northerly 50 feet on the recorded plat. * * • ;j. "
“Defendant contends that the fact that this boundary line was moved is immaterial because plaintiffs ended up receiving more property than he bargained for, actually in excess of over 3,000 square feet or twenty-five per cent; consequently, plaintiff can show no damage or injury.
“This contention is without merit. Plaintiff contracted to buy a lot that had a definite description. * * *
“The defendant had no right to change the boundaries of the lot he had contracted to sell. * * *
***** *
“This controversy was brought about by fact that more fill was added to Lot 461 than anticipated but at the time the fill was added plaintiff already had an equitable interest in the property. Defendant has no claim for the additional land added by his own act whether it be added by mistake, negligence or lack of foresight and caution. * ^ s}c »
Refusing to order specific performance, the chancellor held that appellant had materially breached the contract and held rescission appropriate.
Arguing that the lower court erred in its application of principles of beneficial ownership and in not finding the alteration in the property to be immaterial and unsubstantial, appellant asks this court “to hold that a land developer may make minor changes in a predevelopment sales plat * * * so long as the purchaser of a lot shown on the plat gets land of the quantum, character and value which he bargained for.” In support of its position, appellant cites several cases which enunciate, as a prerequisite to rescission of a sale of realty, the requirement that any mistake therein involved be substantial and material, that the land bargained for be possessed of some peculiar or intrinsic value, and that the land conveyed be wholly different in location and character. See Voss v. *101 Forgue, Fla.1956, 84 So.2d 563; Hancoy Holding Co. v. Lambright, 1931, 101 Fla. 128, 133 So. 631, and Langley v. Iron Land & Development Co., 1927, 94 Fla. 1010, 114 So. 769.
Had the lower court granted rescission simply on the basis of an immaterial mistake as to the location of the land for which appellees contracted, the language of the Langley and Hancoy Holding Co. cases would be applicable. However, the lower court did not base its decision on this ground. Rather, rescission was granted on the basis of a material breach of the contract compounded by inequitable conduct in the appropriation of the increased fill. See Savage v. Horne, 1947, 159 Fla. 301, 31 So.2d 477. Thus, the cases cited by appellant bear only inferentially and only on the issue of the materiality of the breach. The pivotal questions are whether the contract and unrecorded plat established the rights of the appellees and whether the subsequent alteration in the plat and tract constituted sufficient grounds for rescission.
Discussing these in inverse order, it is apparent that the distinctions between the Lot 461 for which the parties contracted and the lot ultimately conveyed are material. Considering the nature of the property, its permitted or intended uses, and the extent to which the alteration affected the size, configuration and location of the property, and recalling that the alteration arose not from mistake at the inception of the contract but from appellant’s affirmative actions after the contract was made, it is clear that the lower court correctly adjudged appellant’s breach as one justifying rescission.
There remains the question of whether appellant’s conduct and the alteration effected was permissive; whether the 1959 contract and sales plat fixed the boundaries of and rights in Lot 461 as there described. While no cases precisely on point were found, those cases holding that parties whose grants rely on a particular plat are bound thereby would suggest that the sales plat in this case was conclusive upon the parties. See Kahn v. Delaware Securities Corp., 1934, 114 Fla. 32, 153 So. 308. In a case somewhat similar to the instant case, Peace River Phos. Mining Co. v. Thos. H. Green, Inc., 1931, 102 Fla. 370, 135 So. 828, the Supreme Court held rescission appropriate when the sale of land was based upon an erroneous plat and consequent mistake. The Court commented:
“ * * * the undisputed fact is that the mistake in the location of the lands was due entirely to the error in the map or plat furnished by the owner. The owner certainly cannot evade the result of a mistake which is occasioned by an error in the document which the owner has furnished for the guidance of the buyer. If the plat had correctly shown the location of Nocatee, there would have been no mistake as to the location of the land. So, after all, the real error was that of the owner.”
In that case, the equities lay with the party deceived by an incorrect plat, similarly equity in this case will afford relief to purchasers who receive land ■ other than that agreed upon, not merely because of an incorrect plat, but because of affirmative action by the vendor altering the plat initially “furnished for the guidance of the buyer.”
Having contracted to sell a particular tract, described solely by reference to a particular plat, the appellant-developer “cannot evade the result of” inadvertent or deliberate alteration of the plat with consequent material alteration of the tract’s dimension, configuration and location. The decree is affirmed.
Affirmed.
ALLEN, Acting C. J., SHANNON, J., and PATTISHALL, W. A., Associate Judge, concur.