SUSAN FRANCES HALL, *Appellant,* v. CHARLES FORMAN LEWIS, M. WATSON AND T. A. HALL, *Appellees.*

En Banc.

Opinion Filed October 19, 1927.

J. D. Bailey, of Florala, Alabama, and Clark & Caldwell, for Appellant;

James H. Finch, for Appellees.

HARRISON, Circuit Judge:

The appellant, Susan Frances Hall, alleged in her bill that she is a citizen and resident of Covington County, State of Alabama. That she is a married woman over the age of twenty-one years, and the wife of defendant, T. A. Hall, and that she owns in fee simple in her own right and name as her separate estate certain real estate in Okaloosa County, and Walton County, State of Florida.

The bill then sets forth a description of the land located in each of said counties, and that ever since she acquired same it has been and now is in the undisputed and peaceful possession of appellant.

She further alleges that the defendant, Charles Forman, is engaged in what is termed "Long Loan Business" and that he is engaged in loaning money in Florida and elsewhere upon real estate and taking long term notes for same and securing said notes by mortgages upon real estate; that the defendant, Lewis M. Watson, according to her information and belief, is connected with or associated with or in the employ of the said Charles Forman in the conduct and

management of said "Long Loan Business" and loans money and takes mortgages and deeds on and for real estate in Okaloosa and Walton Counties, State of Florida, and elsewhere.

It is further alleged in the bill of complaint that appellant is unlettered and unlearned, not even being able to read or write.

The bill, in substance, alleges the existence of two mortgages, one upon the land of complainant located in Okaloosa County, the other on the land of complainant in Walton County, said mortgages being in favor of the defendant, Charles Forman, copies of each are attached and made a part of the bill as Exhibits "A" and "B."

The bill then further, in substance, alleges the existence of two deeds, the one covering the said land located in Okaloosa County, the other on said land located in Walton County, each being a deed in which the defendant, Louis M. Watson, is named as grantee and being from the appellant, Susan Frances Hall, joined by her husband, T. A. Hall, copies of each are attached to the bill and made a part thereof as Exhibits "C" and "D."

The prayer of the bill is for cancellation of the mortgages and deeds and for such other and different relief as she may be entitled. The bill then by paragraph 4 alleges:

"That the alleged mortgages of which Exhibits "A" and "B" are copies are void and of no effect so far as this complainant is concerned; they and each of them are clouds upon complainant's title to the land therein described and should be cancelled of record.

(A) Because the respondents, T. A. Hall, and the respondents, Charles Forman, by and through his representatives and agents took advantage of the ignorance of this complainant and of the fact that she could not read or write and induced her to make her mark to and on the

instrument of which Exhibit "A" is a copy at a place on said instrument where another had written her name without reading said instrument over to her and without informing her of the contents thereof, but on the contrary they and each of them concealed from the complainant the true purport of the paper of which Exhibit "A" is a copy.

(B) That with reference to the alleged execution of the paper of which Exhibit "B" is a copy, this complainant says she never signed same or authorized any other person to affix her name or signature thereto and that she was not present at the time that her name was written thereon nor did· she authorize any one to sign her name to said instrument.

(C) Because T. A. Hall, one of the respondents, and the husband of this complainant was personally present, when this complainant made her mark on and to the said instrument of which Exhibit "A" is a copy and that he was personally present at the time that it is alleged that this complainant acknowledged the execution of the instrument of which Exhibits "A" and "B" are copies and was coercing complainant and insisting that this complainant acknowledge said instrument and that at the time she made her mark on Exhibit "A," the said T. A. Hall was standing right at complainant insisting that she "touch the pen, that it was all right"; that neither the said T. A. Hall or anyone else present at or before the alleged execution of said instrument or either of them advised complainant that she was mortgaging or incumbering her separate estate, and complainant alleges that she would not have made her ·mark to and on said instrument or either of them or done any act or thing toward the execution of said instruments or any instrument had she known that the making of her mark or doings of any other matter or things would purport to place a mortgage or incum-

brance upon her separate estate; that the making of her mark on said instrument was done at the compulsion and coercion of her said husband who was personally present at the time and this was done under the belief that she was joining her husband in the execution of an instrument effecting property lying and being in Florala, Alabama, and being the property of T. A. Hall and in which this complainant had only an intangible interest, or equity or dower.

(C) Because this complainant never acknowledged before any officer authorized to take her acknowledgment that she executed the instruments Exhibits ''A'' and ''B'' for the purpose of conveying or mortgaging the property therein described.

(D) Because the certificate attached to and made a part of the papers or instruments of which Exhibit ''A'' is a copy, is not an acknowledgment of this complainant's before an officer authorized to take her acknowledgment to said instrument.

(E) Because the certificate attached to and made a part of the papers and instruments of which Exhibit ''B'' is a copy is not an acknowledgment of this complainant's before an officer authorized to take her acknowledgment to said instrument.''

The bill further by paragraph 5 alleges the execution of other instruments as follows:

''This complainant further alleges that at the time she was forced to make her mark on said instrument Exhibit ''A,'' that under the same compulsion and coercion she made her mark on several other instruments of writing which she is now informed and believes were promissory notes for the payment of money made payable to the said Charles Forman; that this complainant is not and was not at said time and never has been indebted in any man-

ner or amount to Charles Forman, and she is not now and was not at the time of the alleged execution of said mortgage indebted to T. A. Hall in any sum or amount and that she did not at the time of the purported execution of either of said mortgages or at any time subsequent thereto receive from Charles Forman or T. A. Hall or from any other person in the behalf of them or either of them directly or indirectly any money, acquitance, forbearance, or anything of value whatsoever, and if the making of her mark on the said instruments, papers, or documents, or any other act or thing then done by this complainant pledged her credit or mortgaged her property there was no consideration therefor and the same was procured by fraud and duress."

The complainant then by the sixth paragraph of the bill alleges: "that she did not sign or authorize any one else to sign the mortgage Exhibit "B," nor did she make her mark thereto, nor was she present when her name was written thereon."

And in relation to the execution of Exhibits "C" and "D" being copies of conveyance to said land she alleges as follows:

"That the two instruments purporting to have been executed on September 16th, 1924, and purporting to be deeds from this complainant and T. A. Hall to one Louis M. Watson, copies which are hereto attached marked Exhibits 'C' and 'D' respectively, are void and of no effect against this complainant and should be cancelled of record as a cloud on complainant's title, that complainant was forced and compelled and coerced by her husband, T. A. Hall, against her will to make her mark on each instrument at the place on each of said instruments where complainant's name had been written by another; that at the time of complainant making her mark on said instru-

ments and at the time of the purported acknowledgment of each instrument the said T. A. Hall, her husband, was personally present standing over complainant and insisting that she 'touch the pen, its all right'; that at the time of the alleged execution of the instrument Exhibits 'C' and 'D' and at the time of the alleged acknowledgment was personally present compelling and coercing the complainant against her will.''

Complainant by the 10th paragraph of her bill alleges that at the time of the alleged execution or at the time of the alleged acknowledgment of said several instruments referred to in her bill ''she did not know that the same related to her separate estate in Walton and Okaloosa counties, but was lead to believe by respondents and their agents that the transaction related to property in Florala, Alabama, in which she had only a dower interest.''

That the instruments were not read over to her or the contents explained to her and that had she known or been adivsed that said instruments related to her separate estate in Walton and Okaloosa counties she would not have signed same or made her mark or done any act or thing that would convey, mortgage or incumber her separate estate.''

She also in the 11th paragraph of her bill charges that the defendant, Louis M. Watson, had prior to the making of the deed full knowledge of the transaction between T. A. Hall and Charles Forman and that said Charles Forman and Louis M. Watson realizing that said mortgages were fraudulent and void and conveyed no title colluded and conspired together with each other and with the said T. A. Hall with a view of securing said deed and with a view of avoiding or attempting to avoid a foreclosure of the mortgage referred to without the transaction concern-

ing said land being reviewed or examined by a court of equity or a chancellor.

The defendants, Charles Forman and Louis M. Watson, demurred to the bill and this appeal is from the order sustaining the demurrer with leave to amend, no amendment being made the bill was dismissed.

It is clear, as pointed out by the demurrer filed by appellees, Charles Forman and Louis M. Watson, that no fraud was charged on behalf of either of them and neither was the allegation made that they or either of them had notice of any fraud which is charged against the defendant, T. A. Hall; if, in fact, any fraud was charged against the said T. A. Hall.

The Supreme Court of this State in the case of McClinton et al. v. Chapin et al., reported in the 54 Fla. 510; 45 So. 35 (page 38), said:

"An allegation of fraud in general terms, without stating the facts constituting it, is insufficient, and a demurrer to the bill is not a confession of the fraud." Further:

"Whenever a party relies upon fraud, it ought to be distinctly and positively alleged, upon the first principles of justice, that the person to be affected may have a full opportunity of meeting and disproving the charge."

The Supreme Court of this State also reiterated the same doctrine in the case of Gillespie, Mayer et al. v. Chapline, Town Clerk and Treasurer, reported in the 59 Fla. 500, 52 So. 722.

Even should it be granted that the bill in the instant case alleged that the husband of appellant procured the execution of the mortgages and deeds in question through fraud, then, as above suggested, the bill is wholly lacking in any suggestion that the defendants, Charles Forman and Louis M. Watson, had any notice thereof.

The Supreme Court of this State, speaking through Mr.

Justice WEST, in the case of Smith et al. v. Commercial Bank of Jasper, reported in 77 Fla., page 163, 81 So. 154, text 155, said:

"It is apparent that the alleged fraud practiced upon this defendant was the fraud of her husband, and not the fraud of the complainant. There is no suggestion that the complainant participated in the fraudulent representations by which she was induced to sign the mortgage, or that it even knew of such representations. Neither is there a suggestion that she might not by the exercise of ordinary care have discovered before the delivery of the mortgage that the two lots which she claimed as her separate statutory property were included in the mortgage."

If there were no further allegations in the bill these authorities would unquestionably dispose of the questions raised by the demurrer. As to whether or not fraud was charged against the defendants, Charles Forman and Louis M. Watson, in this cause it will be observed on further examination of the bill by the 7th paragraph appellant charges that the deeds of which Exhibit "C" and "D" attached to the bill are copies are void and of no effect and should be cancelled of record as a cloud on appellant's title; that appellant was forced, compelled and coerced by her husband, T. A. Hall, against her will to make her mark on said instruments at the place on each of said instruments where her name had been written by another and that at the time of making her mark and at the time of the purported acknowledgment of each instrument the said T. A. Hall, her husband, was personally present standing over her insisting that she "touch the pen, it's all right," and that at the time of the alleged execution of the deeds of which Exhibits "C" and "D" are copies and at the time of the alleged acknowledgment her said husband was personally present compelling and

coercing this appellant against her will. It is further noted by subdivision "C" of the 4th paragraph of her bill appellant charges that at the time of the alleged acknowledgment of instruments of which "A" and "B" are copies, the same being mortgages mentioned in her bill, T. A. Hall her husband was personally present coercing and insisting that she acknowledge same.

Certainly these allegations, as are all former allegations in the bill alleging that the defendant, T. A. Hall, had compelled, coerced, or induced the appellant, are objectionable in failing to state what was actually done by him, yet we have the positive allegation that at the time of the purported acknowledgments he was present exerting an influence over her and that such acknowledgment was against her will; therefore, necessarily alleging by any reasonable intendment that may be given the bill that she did not acknowledge and that the officer could not correctly state that her acknowledgment was separate and apart from her husband or that it was freely and voluntarily done.

In addition to the foregoing there is no allegation in the bill which would lead to the conclusion that the mortgages in question were given to secure any debt of the husband, but to the contrary the copies of the mortgages attached and made a part of the bill themselves specify as follows:

"Whereas the grantor, Susan Frances Hall, is justly indebted upon five principal promissory notes bearing even date herewith, payable to the order of the mortgagee for the sum of Four Thousand Dollars ($4,000.00), due as herein specified and bearing interest at the rate of seven per cent per annum, as further evidenced by interest notes attached thereto; both principal and interest being payable at the office of George M. Forman & Co., Chicago, Illinois."

These exhibits taken in connection with the 5th paragraph of complainant's bill in which she alleges that under the same compulsion and coercion "she made her mark on other instruments which she is now informed and believes were promissory notes," would lead to the conclusion that the mortgages in fact were given to secure her own notes and not an obligation of her husband.

By said 5th paragraph of her bill it is further alleged that she was not then nor had she at any time previously been indebted to the mortgagee; that she received no consideration either from the defendant Forman or anyone else for having given said mortgage notes.

The demurrer admitting for sake of argument all matters well pleaded must be taken to admit the mortgages in question were given on the separate estate of a married woman to secure her own notes, and that there was no indebtedness legally chargeable against his other estate secured by the mortgages. These being the charges of the bill construed with the exhibits and being a part thereof.

In Virginia-Carolina Chemical Co. v. Fisher et al., reported in 58 Fla. 377, 50 So. 504 (text 507), the Supreme Court of this State, speaking through Mr. Justice HOCKER, said:

"This Court has been committed to the doctrine that a married woman's note is void since the case of Hodges v. Price, 18 Fla. 342."

In the case of Hodges v. Price above referred to we find the same was a suit brought to foreclose a certain mortgage given by Mary Hodges, and John Hodges, her husband. The note secured being the note of a married woman.

The Court cited with approval the case of American Insurance Company v. Avery and wife, 60 Indiana, 566, as follows:

"It is the settled law of this State that a married woman,

during coverture, can not make a promissory note which will be valid and binding on her."

In the final disposition of the case of Hodges v. Price, *supra,* the Court said:

"Inasmuch as the bill of complaint in this cause shows that it is simply an effort to foreclose a mortgage given to secure the payment of a promissory note made by a married woman, the decree of foreclosure must be reversed and the cause remanded, with instructions that the bill be dismissed without prejudice to the complainant, by proper proceedings to recover the purchase money, if any there be due, for the mortgaged premises."

To consider now whether or not the allegations of the bill were sufficient in so far as the same seeks to impeach the acknowledgment of the several instruments. It is true complainant denies that the officers taking the several acknowledgments were authorized or that the acknowledgments were taken by an officer qualified to make certificate thereof. These allegations, however, are neutralized by the copies of the several instruments attached to the bill and made a part thereof which appear to be in proper form and regular. In the case of Holland et al. v. Webster, reported in 29 So., page 625 (text 629), Justice CARTER speaking for the Court had this to say of both plea and answer filed by a married woman who was seeking to impeach the certificate of the acknowledging officer, her answer being:

"That at the time of the execution of the mortgage she was a married woman; that the property described in the bill was her separate statutory property; that the mortgage was void because the certificate of the officer who took the acknowledgment did not show that she acknowledged—that she executed same freely and without fear or compulsion of her husband; that she denies that the mortgage was duly acknowledged by her as the statute in such

case required; that at no time did she acknowledge on a separate or private examination before the officer who purports to have taken the acknowledgment that she executed the mortgage freely and without fear of compulsion of her husband. Exceptions were filed and sustained."

Mr. Justice CARTER, speaking for the Court:

"The answers do not deny that she made and executed the acknowledgments purporting to be signed by her, attached to the mortgages. The officers certify these acknowledgments were made and executed by her separate and apart from her husband. It is settled in this State that when a married woman has appeared before a magistrate, having signed a deed and acknowledged it, and he certifies a full compliance with the statute, his certificate, except fraud or duress be shown, must be held conclusive of the facts it asserts." Shears v. Robinson, 18 Fla. 379, and other authorities.

Referring to the case cited of Shear v. Robinson, 18 Fla. 379 (text 444), the Court cited the case of Heeter v. Glasgow, 79 Pa. St. 79, as follows:

"The true rule deducible from the authorities is, that the certificate of the Justice of the acknowledgment of a deed or mortgage is a judicial act, and in the absence of fraud or duress, conclusive as to the facts therein stated. A purchaser, *bona fide,* and without notice of the fraud, is protected against it; but as to all other persons parol evidence has been admitted to show fraud or duress connected with the acknowledgment."

We then have in the instant case a positive allegation of the bill that at the time appellant made her mark to said deed and also at the time she made the purported acknowledgments her husband was personally present standing over her. Even should it be ignored that she charges that he was compelling and coercing her against her will. While

it is pointed out that these allegations were certainly insufficient to show that force was used or what coercion was used, yet it is clearly alleged the statute was not complied with.

In the case of Cobb and wife v. Bear, reported in the 49 So., page 29, the Supreme Court of this State speaking through Mr. Justice SHACKELFORD in a suit brought to foreclose a mortgage upon the separate property of the wife, Mary A. Cobb, in which the issues were whether or not the witnesses whose name appeared on the mortgage were present at the execution of the same, the portion of the answer alleging or attempting to allege fraud in the acknowledgment having been stricken, said:

"As it was executed in the presence of only one subscribing witness, it follows that it is ineffectual and invalid and not subject to foreclosure."

It will be observed by a perusal of this case the complainant was the mortgagee and from aught that appears in the record of the case there was no allegation that the mortgagee had any notice or knowledge that his mortgage had been improperly witnessed or acknowledged. However, in a later case Chief Justice SHACKLEFORD prepared the opinion of the Court, the same being McClure v. American National Bank of Pensacola, reported in the 64 So., page 427, being a suit seeking the foreclosure of a mortgage, the complainant in the lower court being an assignee of the mortgagee in which it was alleged that the property covered by the mortgage was and had been for a long time prior to making the mortgage her separate statutory property and in which she denied she ever consciously executed or acknowledged or did anything to execute or acknowledge the mortgage in question but averred her signature was obtained by her husband's certain fraud-

ulent means which she proceeded to set forth in detail. The Court held that should it be granted that the truth established that fraud and deception were practiced upon appellant (married woman) by her husband, that neither one of the witnesses whose name appears thereon were present at the time she signed the same, that she never appeared before the Notary Public whose certificate is appended to the mortgage acknowledging the execution thereof but that the acknowledgment was taken over the telephone, we fail to see wherein such proof will avail appellant. The Court then in that case (text 428), said:

"We fully approve of the principle enunciated in Cobb v. Bear, 57 Fla. 370, 49 So. 29, but that suit was between the mortgagee and mortgagors, as a reference to the opinion clearly shows, while the instant suit is brought by the assignee of the mortgagee."

In concluding the case the Court said:

"What we have said is sufficient for a proper disposition of the case. However strongly we may sympathize with the appellant as the victim of her husband's fraud, we are powerless to aid her. The note and mortgage being fair and regular upon their face in all respects, and having been acquired by the appellee for value before maturity in good faith, without any notice or knowledge of any latent defect therein or of any fraud which may have been practiced upon the appellant by her husband, the appellee can not be required to bear the consequence of such fraud," thereby showing a distinction between those cases in which the alleged fraud in the acknowledgment may be alleged as between the mortgagor and mortgagee, grantor and grantee, or between third persons. It would appear from the authorities above cited, considering all the allegations of the bill, appellant's bill was not wholly without equity.

In answer to the argument that appellant does not by her bill offer to do equity, it has been held in this State:

"That a married woman who comes into a court of equity to be relieved of her invalid contract for the sale of her separate statutory property, upon which she has received most of the consideration, it is incumbent upon her to offer to do equity, or she should allege facts that would excuse her failure to do so."

Knott v. Smith, 84 So. 660.

In the instant case the allegations heretofore discussed are that she has neither directly or indirectly received any consideration for the making of the instruments sought to be cancelled.

She also brought her suit very soon after the making of the deeds, and so long as the original mortgagee held the mortgages it would not appear from the bill that the demurrer should have been sustained on the ground of laches.

There having been sufficient allegations in the bill to entitle appellant to relief, is sustained by proof, there was error in sustaining the demurrer.

"Where, under the allegations of a bill of complaint, an equity for substantial relief may be shown by appropriate and sufficient evidence, it is error to sustain a general demurrer to a bill." Wells et al. v. Williams et al., 86 So. 336.

The order sustaining demurrer to bill of complaint is reversed.

PER CURIAM.—The record in this cause having been considered by this Court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the Court as its opinion, it is considered, ordered and adjudged by

the Court that the order of the Circuit Court in this cause be, and the same is hereby reversed.

Reversed.

ELLIS, C. J., AND WHITFIELD, TERRELL, STRUM, BROWN AND BUFORD, J. J., concur.