JAMES GARRIGA, H. M. DIAMOND AND PORT ST. JOE LUMBER COMPANY, a Corporation, *Appellants,* v. REID LUMBER COMPANY, a Corporation, *Appellee.*

En Banc.

Opinion filed March 5, 1929.

Petition for rehearing denied April 22, 1929.

*Watson & Pasco & Brown,* for Appellants;

*Carter, Solomon, Welch & Pierce,* for Appellee.

BUFORD, J.—The appellee filed suit in the Circuit Court of Gulf County against the appellants, the purpose of which was to obtain a temporary injunction and upon final hearing a decree of perpetual injunction. The bill alleged in substance that on April 20th, 1927, complainants sold to the defendants timber of certain lands described in the bill of complaint for $72,453.75, payable $5,000.00 cash and the balance evidenced by promissory notes of the defendants payable to the order of the complainants every 60 days for $5,000.00, except the last note, which was for the sum of $2453.75, and that the defendants had six (6) years in which to cut and remove such timber. That the contract stipulated that it was agreed that a cruise of the timber had fixed the stumpage at 9,660,500 feet, according to log scale measure in the woods. That the timber had been divided by the cruisers as nearly as possible in equal proportions of five (5) tracts. That defendants were to start cutting and logging tract one (1) and should proceed to cut the timber from the five tracts in numerical order named. They should cut and log timber on each tract designated before cutting and logging timber from any other tract, except that they might suspend logging on any tract and begin on another tract by first paying for the balance of the timber on the tract upon which logging was so suspended at the rate of Seven Dollars and Fifty Cents ($7.50)

per thousand feet, the cruiser's estimate, whether found to be correct or not, to be taken and accepted by both parties as basis for all such settlements.

The bill alleges the number of feet of timber on each tract as shown by the cruise and alleges that the total in feet per thousand of timber as shown by the cruise when multiplied by $7.50 fixes the purchase price as above stated.

It is alleged that the defendants suspended cutting on tract No. 1 and began cutting on tract No. 2 and suspended cutting on tract No. 2 and began cutting on tract No. 3 before having finished cutting on tract No. 1, and before having finished cutting on tract No. 2, and without having paid notes equal to the purchase price of tracts No. 1 and 2, aggregating 4,080,000 feet at $7.50 per thousand, making $30,600.00.

The bill alleges the amount of timber which had been cut from tract No. 3. The value of the timber cut, according to the allegation of the bill of complaint up to the date of the granting of the restraining order, was $36,562.50. The bill does not allege that there had been default in the payment of any note, but does allege that "prior to the entry of the defendants on tract No. 3, they had paid only three of the said notes, amounting to $15,000.00. That since cutting began on tract No. 3 the defendants have paid notes maturing on December 25th and February 25th." It will be observed that these two last mentioned notes were for $5,000.00 each. Therefore, it appears from the bill that five notes for $5,000.00 each, and $5,000.00 cash, aggregating in all $30,000.00, had been paid.

The claim for relief by injunction is based upon the allegation:

That before beginning cutting on tract No. 2 the defendants did not pay notes equal to the purchase price of tract No. 1 and, before entering on tract No. 3

324

the defendants did not pay notes equal to the purchase price of tract No. 2 as provided in said contract. That the said contract has been broken by the defendants in the above particulars. That the defendants began cutting on tract No. 3 on or about the 15th day of January, 1928, and defendants cut on said tract No. 3 up to March 6, 1928, 615,000 feet and since said date have been cutting on said tract at the rate of 20,000 feet a day.

Under the contract, which is made a part of the bill of complaint, the title to all of the timber passed to the defendants for which they agreed to pay a stipulated price at certain times and under certain conditions. The bill alleges a breach of the contract. There is no allegation in the bill that the defendants are insolvent.

The bill shows upon its face that the amount alleged to be due the complainants by the defendants is so fixed by the contract as to leave nothing to conjecture. To arrive at the amount due involves only a mathematical calculation.

No probability of irreparable injury is shown by the allegations of the bill.

A demurrer was interposed to the bill of complaint and should have been sustained upon the first three grounds thereof, which were as follows:

1. That complainant in and by its said bill hath not made and stated such a cause as ought in equity to entitle it to the relief therein prayed or to any relief.

2. That complainant has a good and adequate remedy at law.

3. That complainant in its said bill fails to allege that the cutting of the timber in question by the defendants make and constitute an irreparable loss, or an injury whatsoever.

See Carney et al. v. Hadley, 32 Fla. 344, 14 So. R. 4.

In Creveling v. Chambers, 73 Fla. 512, 74 So. R. 511, this Court say:

It is incumbent upon a complainant to allege in his bill every fact, clearly and definitely, that is necessary to entitle him to relief; and if he omits essential facts therefrom, or states such facts therein as show that he is not entitled to relief in a court of equity, he must suffer the consequences of his so doing. This principle applies to all bills in equity, but is especially applicable to bills seeking an injunction, the rule being that the title or interest of the complainant and the facts upon which he predicates his prayer for such relief must be stated positively, with clearness and certainty. The bill must state facts and not opinions or legal conclusions.

To the same effect was the opinion in the case of Inter-State Lumber Company v. Fife, 70 Fla. 178, 69 So. R. 715.

J. S. Betts Co. v. South Ga. Ry. Co., 69 Fla. 46, 67 So. R. 861, this Court say:

Where the legal remedies for a breach of a contract are ample, the basis for equitable relief should be otherwise shown.

On hearing a temporary restraining order was granted from which order appeal was taken and, among other things, the order overruling the demurrer to the bill of complaint was assigned as error.

For the reasons stated, the order appealed from should be reversed, and it is so ordered.

Reversed.

TERRELL, C. J., AND WHITFIELD AND STRUM, J. J., concur.

ELLIS AND BROWN, J. J., dissent.

ELLIS, J., dissenting:

I do not agree to the conclusion reached by the other members of the Court. It rests upon a contract which the parties did not make.

The purchasers of the timber and the seller, Reid Lumber Company, agreed in writing to the terms under which the purchasers could enter upon, cut and remove the timber on the land described. They agreed to a division of the timber into five tracts; that the cutting and removal of timber should begin on tract No. 1 and be completed before the purchasers should begin cutting on tract No. 2; that the timber on each tract was to be exhausted by cutting to the amount of the agreed estimate of footage for the particular tract before the purchasers should begin cutting on the next tract in numerical sequence.

It was definitely agreed that should the purchasers desire, before completing the cutting on any one tract, to remove to the next tract in sequence they should first pay the estimated value of the timber on the tract on which they were cutting, according to the agreed estimate of footage at $7.50 per thousand.

In that event only were they authorized under the contract to proceed to the tract next in sequence and cut and remove the timber therefrom.

The contract was perfectly valid. The seller took that method of securing the promises to pay for the entire lot of timber sold. It was the only security which the seller had retained for the fulfillment of the contract by the purchasers. The conclusion reached destroys that security which the parties by a valid agreement among themselves

set up for the faithful execution of the contract by the purchasers.

When the bill was filed the purchasers had moved from tract No. 1 to tract No. 2 and thence to tract No. 3 and on the latter had cut approximately 695,000 feet of timber. The removal to tract No. 3 occurred January 11, 1928. Under the terms of the contract when the purchasers desired to remove to tract No. 3 they should have paid to the seller, exclusive of the cash payment of $5,000 when the contract was signed, the sum of $30,599.

Four notes on January 15, 1928, aggregating $20,000, had become due and were paid. Later when the note due in February matured it was paid, but there still remained due when the purchasers removed to tract No. 3 the sum of $5,599. Before the bill was filed the purchasers had cut on tract No. 3 timber to the value of $5,212, making a total of $10,811 more than the aggregate amount of the notes paid to March 10, 1928, when the bill was filed.

The security of the seller therefore was impaired to that extent.

If the conclusion reached by the majority is correct it follows that under the terms of the agreement the purchasers could have put a sufficient force of laborers on the land to strip it of its timber before the due date of the fifth note and left the seller to its remedy at law on the remaining ten notes aggregating a balance due of $47,453.75. The security of the seller would have been destroyed by the wrongful act of the purchasers yet the seller would be deemed by the Court to have suffered no injury because it is assumed that in the absence of an allegation of defendants' insolvency they would be able to respond and would respond in damages to the seller in actions upon the notes as they became due respectively.

Under the law, as it exists in this State, the unlawful

destruction of timber by another is *per se* an irreparable injury to its owner where the trees constitute the principal value of his estate, and the complainant's equity in this case in no wise depends upon the matter of defendants' insolvency.

Nor can it be said that under the terms of the agreement the conveyance of the standing timber on all the tracts to the purchaser was one *in praesenti*. Their right to enter upon, cut and remove the timber depended upon the performance by them of the contract on their part to be performed with respect to each tract.

I think the order appealed from should be affirmed.

BROWN, J., concurs.