W. E. STEPHENS, JR., *et ux.,* v. P. R. COON.

177 So. 191.

Division A.

Opinion Filed November 6, 1937.

*Paul C. Albritton,* for Appellants;

*Williams & Williams,* for Appellee.

BUFORD, J.—In a suit instituted January 30th, 1936, to foreclose a mortgage executed the 5th day of January, 1926, to secure the payment of $2,000.00 balance of purchase price and on which there was a balance due on principal in the sum of $450.00, with interest at 8% per annum from Jan-

uary 4th, 1928, defendant filed answer embracing counter-claim and praying affirmative relief. Defendant alleged that he had paid $2,550.00 on the agreed purchase price of $3,000.00 of the property involved. It was then alleged:

"Defendant further avers that he was induced to purchase said property by the representation of one Earl Beeler, who was appointed exclusive sales agent for Enchanted Isles, by a deed of trust executed on the 4th day of February, A. D. 1924, by and between Francis A Curry, joined by his wife, Gertrude Curry, therein called the Trustors, First National Company of Sarasota therein called the Trustee, and Earl Beeler therein referred to as the Developer, a copy of which Trust Agreement is hereto attached as Exhibit 'A' and made a part hereof as though pleaded *in extenso;* that it was represented to the defendant by the said Earl Beeler in selling said property that financial arrangements had been made and sufficient finances provided to develop the said property in the following respects:

"1. To build a sea wall in and about said property not less than 9,910 feet in length.

"2. To construct canals according to plat of said property to such a depth as to carry $3\frac{1}{2}$ feet of water at low tide.

"3. To build sidewalks in front of all lots, said sidewalks to be constructed of concrete and to border on the lot purchased by the defendant.

"4. To pave all streets adjacent to the canal to a width of not less than 20 feet.

"5. To construct bridges in and about said property and over said canals and to make fills wherever required to bring all of the said property up to the level of the highest point of said purported development.

"And defendant avers that he relied upon said premises and representations made to him in purchasing said lot or parcel of land and did purchase the same as hereinabove set forth and described. And defendant further avers that none of said premises and representations on the part of the said Earl Beeler, acting in the capacity aforesaid and within the terms of said Trust Indenture have been carried out or performed and he avers that the representations made to him with respect to the ability to finance the development and the plans and the fact that sufficient money had been provided and the finances arranged to develop said property as promised and represented, were false and known to be false at the time defendant was induced by virtue thereof to purchase said property.

## "THIRD.

"Defendant further avers that the First Trust Company of Sarasota as successor in Trust to the First National Company of Sarasota, is a necessary party to this proceeding by virtue of the deed from the First National Company of Sarasota to this defendant.

## "FOURTH.

"Defendants further aver that the plaintiff in this cause, P. R. Coon, acquired the mortgage and note sought to be foreclosed in this action after maturity thereof burdened with all defenses which this defendant might or could have against the original payee therein.

"Forasmuch, therefore, as the defendants are without remedy in the premises except in a Court of Equity where such matters are cognizable and relievable, these defendants pray:

## "I.

"That the deed from First National Company of Sarasota to the defendant, W. E. Stephens, Jr., be canceled and set aside.

## "II.

"That the mortgage and note sought to be foreclosed in this action be canceled and that the defendant, W. E. Stephens, Jr., have a Vendee's lien in the sum of Twenty-five Hundred Fifty and No/100 ($2,550.00) Dollars with interest thereon at the rate of 8% per annum from January 5th, 1926, against the property described in this action."

Exhibit "A," which is in terms made a part of the answer, contains the following provisions:

"THIS INDENTURE, Made and executed this 4th day of February, A. D. 1924, by and between Francis A. Curry, joined by his wife, Gertrude A. Curry, of Sarasota County, Florida (hereinafter called the Trustors), and First National Company of Sarasota, a corporation having its principal place of business in Sarasota County, Florida (hereinafter called the Trustee), and Earl Beeler of Sarasota County, Florida (hereinafter called the Developer),

"WITNESSETH: Whereas, the said Francis A. Curry and Gertrude A. Curry were, until the date of the execution of these presents, the owners of the following described real estate located in Sarasota County, Florida, to-wit:

"United States Government Lot Six of Section One, Township Thirty-nine South, Range Eighteen East; and,

"*Whereas,* said Developer has subdivided or intends shortly to subdivide said land into lots and blocks and thereupon improve, develop and sell the same, said subdivision to be known as 'Enchanted Isles,' and,

"*Whereas,* to facilitate the carrying out of said project it is necessary that a Trustee be appointed to receive and

distribute these funds, hold the legal title to said land and make conveyances as sales are effective, receive the proceeds of sale and account therefor, and otherwise attend the fiscal details involved; and that a Developer should be designated to find purchasers for said land and to supervise the work of developing same:

"Now, therefore, in consideration of the premises and of the stipulations hereinafter set out, the said Trustors and Developer each with the others and they jointly with the Trustee do covenant and agree:

"(A). That the Developer shall perform the following duties in reference to this agreement:

"(1) He shall proceed to improve said property in the following manner:

"(a) He shall construct around said property at wherever the same may be required, a seawall to be built of pecky cypress according to plat; said seawall when completed shall be not less than Nine Thousand, Nine Hundred and Ten feet in length. However, it is distinctly understood that the parties to this agreement may mutually extend or limit said seawall except, however, that the seawall shall in no case be limited beyond that which is shown on said plat.

"(b) The Developer shall construct on said land all canals as shown by the plat of said property, said canals shall be approximately sixty feet wide with approximately forty feet of water in the clear at low tide, said canals shall be dredged to such depths as will carry three and one-half feet of water at low tide.

"(c) Sidewalks shall be constructed in front of all lots as shown on said plat, said sidewalks shall be made of concrete.

"(d) The Developer shall proceed to pave all streets ad-

jacent to canals to a width of not less than twenty feet; all other streets shall be paved not less than twenty feet from curb to curb; all paving shall be of local shell and of a depth of not less than seven inches; all streets shall have the necessary curbing to give them adequate protection.

"(e) The Developer shall proceed to construct bridges in said Subdivision as shown on said Plat.

"(f) Sufficient mud or sand shall be dredged from the bottom of bay (together with what shall be taken from canals) to make elevation of entire property equal approximately to highest point of elevation as it exists at the present time. Sufficient mud or sand shall be dredged to overflow the outside walls and to make a sloping bank to protect said walls.

"(g) In the event that the Developer should fail to let the contracts for the construction of the above improvements so that in the opinion of the Trustee said improvements would not be completed within the time specified in this agreement, then the Trustee is hereby authorized to give to the Developer ten days notice in writing that said contracts must be let within the specified time set out in said notice. If the Developer does not proceed to let said contracts after receipt of the above mentioned notice, then the Trustors may with the approval of the Trustee, forthwith let said contract. No contracts shall be let until the Developer shall have deposited in the Development Fund sufficient money to cover the cost of said contract or contracts.

"(h) Detailed specifications of all of said improvements being hereto attached and by reference made a part of this agreement.

"(i) All improvements shall be completed by January 1, 1926. In the event that said improvements are not com-

pleted on January 1, 1926, then the Developer shall be allowed an additional period of sixty days with which time to complete said improvements.

"Work on said improvements shall begin not later than February ...., 1925.

"In the event that said improvements are not completed within the time specified in this contract, then it is distinctly understood and agreed by and between the parties hereto that the Developer shall lose all of his right, title and interest under this contract, and he shall in no event be entitled to any of said land or to the proceeds or any part thereof arising from the sale of said land. In the event that the Developer shall lose his rights under this contract, then all money which shall be in the development fund at that time shall be used by the Trustee for the purpose of completing said developments.

"(2) He shall use his best efforts to find purchasers for said property upon the best possible terms, said terms to be not less favorable than those set out in this agreement.

"(B) The Trustee shall perform the following duties in connection with this indenture:

"(1) The Trustee shall receive and receipt for and give acquittances for all money and evidences of indebtedness received from the sale of said property; it shall make and execute all sales contracts and deeds for said property upon the terms and conditions hereinafter set out.

"(2) The Trustee, for its services as Trustee, shall pay to itself out of said trust fund the sum of one per centum upon Fifty Thousand Dollars, and the further sum of three per centum upon the gross sales price of said land, together with any and all expenses that it may be put to in connection with said land; and the items set out in this paragraph shall be and constitute a first and prior claim on the trust fund.

"(3) After first deducting all carrying charges and cost of administering said trust estate, the Trustee shall distribute the proceeds arising from the sales of said lands as follows:

"(a) Seventy-five per centum thereof shall be credited to the sole use and benefit of Francis A. Curry until he shall have received the sum of Seventy-five Thousand Dollars; and twenty-five per centum thereof shall be set aside and deposited in the First Bank & Trust Company, of Sarasota, Florida, in a fund to be known as 'Enchanted Isles Development Fund' until said fund shall be credited with Forty-two Thousand Five Hundred Dollars; after the said Francis A. Curry shall have received Seventy-five Thousand Dollars; then all money received shall be credited to 'Enchanted Isles Development Fund' until said fund shall be credited with the total amount of Forty-two Thousand, Five Hundred Dollars; after the total sales amount to One Hundred Seventeen Thousand, Five Hundred Dollars, then the Trustee is hereby authorized and directed to pay to the Developer a ten per centum commission on all sales made, it being understood that the Developer is hereby appointed the exclusive sales agent for the Trustee so long as this agreement shall remain in effect; after the said Francis A. Curry shall have received the sum of Seventy-five Thousand Dollars, and after 'Enchanted Isles Development Fund' shall have been credited with the total sum of Forty-two Thousand Five Hundred Dollars, then the balance of all money received shall be accounted for and distributed by the Trustee as follows: Fifty per centum thereof shall be credited to the sole use and benefit of Francis A. Curry and the Trustee shall account for and pay over said money to Francis A. Curry or his order; fifty per centum thereof shall be

credited to 'Enchanted Isles Development Fund' which fund shall be distributed as set out in this agreement.

"(4) It shall be the duty of the Trustors to inspect and approve the improvement work that is done by the Developer and the Trustee is hereby authorized and directed to pay to the Developer such money from time to time out of the Development Fund as may be necessary to carry on said developments; no money shall be paid to the Developer, or his order, except upon presentation of proper vouchers to the Trustee, and said vouchers shall only be paid as they have been approved by the Trustors.

"The Developer shall not be entitled to receive any money under this Trust Agreement except for improvement purposes until the improvements called for in this agreement shall have been fully completed. After said improvements have been fully completed all money remaining in the Development Fund shall be forthwith paid over to the Developer by the Trustee.

"(5) If, on March 1, 1927, sufficient property shall not have been sold so as to give the said Curry the sum of Seventy-five Thousand Dollars, then the Trustee shall set aside and shall convey to the said Curry such property as in its sole judgment shall, together with the money already received by Curry equal in value to Seventy-five Thousand Dollars. If on March 1, 1927, there should remain unsold any of said property and after the conveyance of such property to the said Curry as above set out, has been made, then the balance of the property remaining unsold at that time shall be divided equally between the said Curry and the Developer, and the Trustee is hereby authorized and directed to make said conveyances.

"(6) The Trustee shall furnish to all purchasers its certified copy of Abstract or Abstracts prepared by an Abstract

Company and all expenses incurred in connection therewith shall be charged to the Trust Estate.

"(7) The Trustee shall make disbursements under this agreement on the 1st day of each and every month, and with said disbursements the Trustee shall furnish to the parties interested an itemized statement of all receipts and disbursements.

"(8) That the Trustee shall pay from the trust fund all taxes and special assessments that may be levied against said property during the term of this Trusteeship; said payments to be made by the Trustee out of the trust fund.

"(9) That no contract of sale for any of said property shall be assignable without the written consent of the Trustee; and for the registration of any assignment the Trustee shall receive the sum of One Dollar to be paid by the Assignor at the time such assignment is made."

The pleadings show that appellant purchased the property at the price of $3,000.00, paying $1,000.00 cash and executing and delivering four promissory notes for $500.00 each, maturing on July 5th, 1926, January 5th, 1927, July 5th, 1927, and January 5th, 1928, respectively, and bearing interest at the rate of 8% per annum; and that all notes and interest except the last mentioned were paid and, at maturity of the last note, two years after date thereof, appellant paid $50.00 on principal and accrued interest.

The answer of appellant, by inclusion of Exhibit "A," shows that the construction of the improvements was dependent upon the success of the sale of the lots in the subdivision. The pleadings fail to show an unqualified and unconditional agreement on the part of the vendors to accomplish the improvements named in the answer.

Appellant ratified and confirmed his promises and agreements contained in the mortgage for two full years and is

not shown to have questioned the *bona fides* of the transaction for a period of more than ten years when this suit was filed to enforce the payment of the small balance due on the obligation, and then no injury is alleged.

We hold that this case is ruled by the opinion and judgment in the case of Stokes, *et al.*, v. Victory Land Co., 99 Fla. 795, 128 Sou. 408, in which we held:

"There is involved in the matter of false representations as a basis for rescission of contract the element of resulting injury to the person seeking the relief which is not supplied by the bare allegation of such injury. Such facts as show a connection between the representation as made and the land value as affected by it must appear. This material element of the alleged fraud may not be left to mere conjecture and averment.

"Deceit and fraud if not acted upon or if not accompanied by injury are moral, not legal wrongs. It is of the very essence of an action of fraud or deceit that the same shall be accompanied by damage.

"In a suit for rescission of a contract for the purchase of land upon the ground of a fraudulent oral misrepresentation of an existing material fact affecting the value of the land the fact about which the misrepresentation is made must be one the true nature of which is not capable of being ascertained by the exercise of reasonable effort on the part of the one to whom the misrepresentation is made."

If there may be degrees of insufficiency, the insufficiency of the allegations of the affirmative answer in the instant case are more pronounced than were those of the allegations in the bill of complaint in the Stokes case, *supra*.

The order appealed from should be, and is, affirmed.

So ordered.

ELLIS, C. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur in the opinion and judgment.