Maxwell Baxter v. Paul A. Thompson and Herbert S. Thompson

184 So. 118.
Division B.
Opinion Filed October 6, 1938.
Rehearing Denied November 8, 1938.

*Maxwell Baxter,* for Appellant;

*Butt & Akridge,* for Appellees.

Per Curiam.—Maxwell Baxter made a contract of sale of sawmill timber with Paul A. Thompson and Herbert S. Thompson, the material portions of which are, viz.:

"This Agreement made and entered into this 17th day of December, A. D. 1934, by and between Maxwell Baxter,

of Brevard County, State of Florida, hereinafter called the party of the first part, and Paul A. Thompson and Herbert S. Thompson, of the County of Brevard, State of Florida, hereinafter referred to as the parties of the second part;

WITNESSETH: That in consideration of the sum of $2,000.00 to be paid by the parties of the second part to the party of the first part, upon the execution of this agreement, and of the mutual promises and agreements herein contained, the parties hereto hereby agree as follows:

"1. The party of the first part does hereby bargain, sell, lease and convey unto the parties of the second part all timber, pine or otherwise, standing on land now owned by the party of the first part, situate, lying and being in the County of Brevard, State of Florida, and more particularly described" * * * as containing 1670 acres. * * *

"2. The party of the first part does hereby grant permission to the parties of the second part, or to their assigns, to enter the said premises for the purpose of building camps and roadways necessary for the cutting and removing of said trees and timber during the term of this Lease.

"3. The parties of the second part shall have three years from the date hereof in which to cut and remove said timber, uiless this permit shall have earlier terminated for breach of conditions, the said three year term subject, however, to the conditions named herein."

The contract of sale fixed the price of the timber at $5.00 per thousand feet of cut timber. The time for beginning the operation of the saw mill to be placed on the land was not later than January 15, 1935. The delinquent taxes on the land were to be paid and the amount so paid deducted from the monthly payment due under the terms of the contract. The monthly payments were to be based on a minimum of 60,000 feet and these payments so made

would absorb the $2,000.00 advanced to the owner of the timber by the mill operators. The land contained some 1600 or 1700 acres and the parties contemplated that the timber could be cut or manufactured into lumber within a period of three years.

On August 16, 1937, plaintiffs filed in the Circuit Court of Brevard County, Florida, an amended bill of complaint praying for (a) a cancellation of the contract; (b) a vendor's lien on all the pine timber situated on the land; (c) and an accounting. The reasons for the prayer is based on paragraphs of the amended bill, viz.:

"2. Plaintiffs show that they made the down cash payment of Two Thousand Dollars ($2,000) to the defendant as part purchase price for said timber and pursuant to the terms of said contract, and plaintiff, Herbert S. Thompson, did install one of his saw mills on one of the tracts of land aforesaid and commenced cutting the timber thereon in strict compliance with the terms of said contract and that after plaintiff, Herbert S. Thompson, had cut approximately one hundred Thousand (100,000) feet of timber plaintitffs then learned that the major portion of the timber which was pointed out to plaintiffs by defendant as being the timber plaintiffs were purchasing from defendant, was not located on any of the above described lands, and that the major portion of said timber so pointed out to plaintiffs by defendant did not belong to defendant, and was not sold to plaintiffs in and by the aforesaid contract and thereupon plaintiff, Herbert S. Thompson, did desist from cutting any other timber until some arrangements satisfactory to plaintiffs could be worked out between plaintiffs and defendant and plaintiffs did then and there immediately notify defendant that they had discovered that the major portion of the timber pointed out to plaintiffs by defendant was not located on the lands described in said contract,

and called upon defendant to either refund all of the Two Thousand ($2,000) paid to defendant as a down payment by first deducting the value of the timber cut from defendant's land by plaintiff, Herbert S. Thompson, or secure for plaintiffs the timber pointed out to plaintiffs by defendant and represented to plaintiffs by defendant as being the timber these plaintiffs were purchasing under their said purchase contract. That as a result thereof, defendant did notify these plaintiffs that he would cause a survey to be made by a competent surveyor and would definitely establish the boundary lines of the aforesaid lands and thereby assure plaintiffs that they were purchasing the timber which defendant had pointed out to them as being on the aforesaid described lands, which negotiations extended for a long period of time, and finally on June 9, 1936, defendant notified these plaintiffs that he would not proceed further under his said contract and that he was going to retain the down payment of Two Thousand Dollars ($2,000) made by plaintiffs pursuant to said contract.

"3.  Plaintiffs show that prior to the time the aforesaid contract was entered into between plaintiffs and defendant, defendant furnished these plaintiffs with what purported to have been a plat or map of the lands described in the aforesaid contract, which plat or map had thereon certain permanent monuments and landmarks and it also had thereon what purported to be tracings of the timbered lands as well as the prairie lands located on the lands described in the aforesaid contract. One of said landmarks appearing on said plat or map furnished plaintiffs by defendant is a tracing appearing thereon designated as 'Bull Pens,' same being pens or corrals constructed for the purpose of confining bulls or other cattle. That with the assistance of the said plat or map furnished to plaintiffs by defendant, plaintiffs did go upon the lands as pointed out to plain-

tiffs by defendant as being the lands described in the aforesaid contract and with the assistance of the plat or map so furnished as aforesaid, and did cruise the timber located on the lands pointed out to them as being the lands described in the aforesaid contract and in doing so, plaintiffs followed the directions of the defendant by using said bullpens as shown on said map or plat as the point of reference, and by using said bull pens as the point of reference as shown on said map or plat, plaintiffs did make a cruise of the timber located on the land as shown on said plat or map furnished plaintiffs by defendant as aforesaid and represented to plaintiffs by defendant as being the timber which plaintiffs were purchasing from defendant under and by virtue of the aforesaid contract. And after making said cruise, plaintiffs were satisfied that the quantity and quality of timber which defendant represented to plaintiffs they were purchasing was located on said lands: and in relying solely upon the information given plaintiffs by defendant, and the representations made by defendant to plaintiffs, plaintiffs entered into said purchase contract and made the down payment of Two Thousand Dollars ($2,000) as aforesaid.

"4. Plaintiffs further show that the representations and information furnished them by the defendant as an inducement to enter into the aforesaid purchase contract were untrue and that by reason of said false representations, plaintiffs were deceived thereby and by reason of said deception made their down payment of Two Thousand Dollars ($2,000) aforesaid and executed the aforesaid purchase contract. Plaintiffs show that they acted solely on the representations made by defendant that the timber purchased by plaintiffs under the aforesaid contract was the same as shown by the traces appearing on the map or plat furnished by the defendant to plaintiffs as aforesaid. A photostat

copy of said map or plat is hereto attached marked Exhibit 'B' and made a part hereof. However plaintiffs alleg: said representations were untrue, in that, it appears from said map or plat that the bull pens as shown thereon were constructed on a portion of the Northwest Quarter of the Southwest Quarter of Section Three, Township Thirty, South, Range Thirty-seven, East, and partly on the Northeast Quarter of the Northwest Quarter of said Section, Township and Range; When in fact, after defendant had notified plaintiffs that he would not cause a survey to be made of the lands owned by him so that plaintiffs could definitely know the boundary lines of the lands described in the aforesaid contract, and definitely know the amount and quality of timber located on said lands as defendant had repeatedly promised to do, plaintiffs did cause a survey to be made of the lands described in the aforesaid contract by a competent surveyor, namely, J. Q. Wickham, a civil engineer residing at Eau Gallie, Brevard County, Florida, for the purpose of definitely establishing the corners of the lands of defendant as described in said contract and for the purpose of definitely locating the boundary lines of said land with reference to the bull pens as shown on the map or plat so furnished plaintiffs by defendant aforesaid and it developed from said survey of said lands so made by the said Wickham that the bull pens pointed out to plaintiffs as shown on said map or plat aforesaid were, in fact, located on the Northwest and the Northeast Quarters of the Southeast Quarter of Section Three, Township Thirty South, Range Thirty-seven (37) East, and removed one-half miles to the east of the place where they were pointed out to plaintiffs as being located and as they appear on said map or plat so furnished plaintiffs by defendant. It further developed, by said survey, that said bull pens were not lo-

cated on any of the lands described in the aforesaid contract.

"5. Plaintiffs further show that from the survey made by the said Wickham it developed that all of the choice timber pointed out to these plaintiffs by defendant as being the timber plaintiffs were purchasing from defendant under their said contract, nor did said timber belong to the defendant. That all of the heavy timber which plaintiffs understood they were purchasing from defendant was located around the aforesaid bull pens, and that it was for the purpose of purchasing said timber surrounding said bull pens that induced plaintiffs to enter into the aforesaid purchase contract.

"6. Plaintiffs show that, in making the aforesaid down payment of Two Thousand Dollars ($2,000), and in the execution of the aforesaid contract, they did so solely upon the representation made to plainttiffs by defendant that the aforesaid bull pens and the timber surrounding said bull pens were located on the aforesaid lands. That in the payment of said Two Thousand Dollars ($2,000) as a down payment, and the execution of said contract, these plaintiffs were relying on said representations made to them by the defendant, as being true; that if plaintiffs had been furnished the correct information by defendant with reference to said timber, plaintiffs never would have paid said down payment of Two Thousand Dollars ($2,000) or executed said contract."

The timber lease or contract and a copy of the plat or map of the tract of land by appropriate allegations are made a part of the amended bill of complaint.

On August 30, 1937, the defendant filed a motion to dismiss the amended bill of complaint containing thirty-five grounds, and one ground thereof being that the amended bill of complaint is without equity. The lower court denied

the motion to dismiss and an appeal therefrom has been perfected to this Court. A motion to dismiss a bill of complaint for want of equity admits as true, for sake of argument, all matters well pleaded. See Hall v. Lewis, 94 Fla. 682, test p. 693.

Where a bill in equity states an equitable basis for relief, as well as matters of equitable cognizance connected therewith, an order overruling a general motion to dismiss the bill, being the equivalent of an order overruling a general demurrer to the bill, should be affirmed, and the cause remanded for further appropriate proceedings which will result in the determination of the substantial equities asserted at a full hearing on the merits of the cause. See City of Jacksonville v. Shaffer, 107 Fla. 363, 144 So. 892. It has been held by this Court that a sale of standing timber is a contract concerning an interest in land within the meaning of the statute of frauds. See Richbourg v. Rose, 53 Fla. 173, 44 So. 69, 125 Am. St. Rep. 1061, 12 Ann. Cas. 274; Elsberry v. Sexton, 61 Fla. 162, 54 So. 592.

It will be observed by the allegations of the amended bill of complaint, *supra,* that the plaintiffs, pursuant to the terms of the contract, went upon the land, cut a portion of the pine timber and manufactured into lumber about 100,000 feet when they for the first time learned they had not purchased the timber pointed out to them by the defendant prior to entering into the contract and the payment of the $2,000.00. When plaintiffs learned or discovered they had not bought the timber considered or contemplated and that a mistake existed as between the parties as to the exact pine timber conveyed by the contract between them, they desisted from further operations under the contract and demanded a recission and an accounting. The services of an engineer were obtained and a survey of the land made, when it was definitely established that the plaintiffs under

the contract did not obtain the pine timber pointed out to them by the defendant as then standing on the land described in the contract. The timber pointed out by the defendant to the plaintiffs was located on lands not owned by the defendant, but plaintiffs entered into the contract and advanced the sum of $2,000.00 believing that they were obtaining the timber pointed out to them by the defendant. It is reasonable to assume that the defendant thought or believed he owned the land on which the disputed timber was located. Counsel for appellees in their brief state, "We are of the opinion that the mistake of the defendant was an honest one." The case at bar appears to be ruled by Langley v. Irons Land & Development Co., 94 Fla. 1010, 114 So. 769. See Jones v. Walter C. Hardesty, Inc., 100 Fla. 155, 129 So. 497; Willis v. Fowler, 102 Fla. 35, 136 So. 358; Peace River Phosphate Mining Co. v. Thomas A. Green, Inc., 102 Fla. 370, 135 So. 828; Woodruff v. Lantana Finance Corp., 102 Fla. 950, 136 So. 712; Norris v. Eikenberry, 103 Fla. 104, 137 So. 128; Cornell v. Ruff, 105 Fla. 504, 141 So. 535; International Realty Associates, Inc., v. McAdoo, 87 Fla. 1, 99 So. 120; Bardwell v. Albertson, 120 Fla. 106, 162 So. 321.

It is contended by appellant that even if it is admitted that the disputed timber was pointed out prior to signing the contract and paying the money, it is not alleged in the amended bill (a) that the purchasers were by the appellant prevented from making an independent investigation of the timber; (b) that the contract was not fully observed or kept by appellees; (c) that for these and other reasons they do not come into a court of equity with clean hands: (d) the facts alleged fail to state a cause of action conferring jurisdiction on a court of equity. Counsel, to sustain his position, cites Stephens v. Coon, 130 Fla. 42, 177 So. 191; Stokes v. Victory Land Co., 99 Fla. 795, 128 So. 408;

Leathers Development Co. v. Orange Inv. Co., 97 Fla. 278, 120 So. 829; Garriga v. Reid Lbr. Co., 97 Fla. 321, 120 So. 354. We have considered the cited authorities and have examined authorities not cited by counsel and find that primarily the question for us to decide is, does the amended bill of complaint contain equity? We think it does and for this reason the order appealed from is affirmed. It is so ordered.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

TERRELL and BUFORD, J. J., concur in the opinion and judgment.

ELLIS, C. J., dissents.